UNITED ASSOCIATION OF JOURNEY-
MEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING IN-
DUSTRY OF the UNITED STATES
AND CANADA, AFL–CIO, LOCAL 198

v.

NICHOLS CONSTRUCTION
CORPORATION.

Civ. A. No. 80–56–B.

United States District Court,
M. D. Louisiana.

Dec. 4, 1980.

Louis L. Robein, Jr., Barker, Boudreaux, Lamy, Gardner & Foley, New Orleans, La., for plaintiffs.

William R. D'Armond, Sanders, Downing, Kean & Cazedessus, Baton Rouge, La,, for defendant.

FRANK J. POLOZOLA, District Judge:

United Association Local 198 ("the Union") has filed this suit pursuant to 29 U.S.C. § 141 against Nichols Construction Corporation (Nichols) seeking judicial review of an arbitrator's decision which denied certain relief sought by the plaintiff.

The Court has jurisdiction herein pursuant to 29 U.S.C. § 185(a).

Plaintiff contends the decision of the arbitrator which found that union employees were not entitled to certain compensation was erroneous and should be overturned by this Court. There are no disputes in the facts which led to the appointment of an arbitrator to hear the disputed wage claim.

During the spring of 1979, Nichols and the Union were parties to a collective bargaining agreement, which was being negotiated. This agreement expired on April 30, 1979, but was extended by mutual consent of the parties through May 4, 1979. When Union members voted down a settlement offer on April 27, 1979, a strike seemed inevitable. On May 2, 1979, two days prior to the expiration of the contract, a bomb threat was called in to a pay telephone located at the Nichols fabrication shop. The call was received by an apprentice pipefitter, Paul Elliot, who relayed the threat to the general foreman, George Lovett. The message was then conveyed to the corporation's president, Bert Turner, who immediately ordered that the shop's employees be sent home for the day. Law enforcement authorities were immediately notified. A subsequent check of the premises by city police uncovered no bomb. As a result of the scare, approximately fifty–five (55) employees,[1] represented by the Union, each lost 1.2 hours of work and pay. The Company's refusal to pay these lost wages is the subject of this lawsuit. Nichols has taken the position that no employee should be compensated for this lost time. The Union argues that the employees are entitled to payment of wages for the 1.2 hours each employee lost as a result of the bomb scare. After being notified that Nichols would not pay for the lost time, the Union filed a timely grievance pursuant to the collective bargaining agreement. Additionally, the Union filed unfair labor practice charges with the National Labor Relations Board (NLRB). The matter was grieved through proper channels, culminating with a hearing

before an impartial arbitrator, Ernest E. Marlatt, on November 19, 1979. After conducting the arbitration hearing during which various witnesses testified and other evidence was introduced, the arbitrator denied the Union's grievance. The NLRB, which held the unfair labor charges in abeyance pending the arbitration ruling, reviewed the arbitrator's decision and refused to issue a complaint. Thereafter, the Union filed this suit requesting the Court to vacate the arbitrator's decision or, alternatively, to remand the grievance for further arbitration.

The parties have submitted the case to the Court for a decision based on the record and an agreed stipulation of facts. The first issue the Court must determine is whether or not the Court is empowered to review the arbitrator's decision. If so, the Court must determine the scope of review for matters involving the labor arbitration process. Finally, the Court must determine whether the arbitration decision in this case be affirmed, reversed, or remanded for further consideration.

The collective bargaining agreement by which the parties were bound provided for settlement of disputes by means of arbitration. The controlling provisions of this bargaining agreement, which were interpreted by the arbitrator and are the subject of this suit provide:

"ARTICLE IX(A)

A. Eight hours per day shall constitute a standard work day between 7:00 a. m. and 5:00 p. m. as established by the Employer with one–half hour designated for lunch. The lunch period will be on the employee's time.

\* \* \* \* \* \*

ARTICLE IX(C)

C. An Employee, after being hired and reporting for work at the regular starting time and for whom no work is available, shall receive pay for two (2) hours at the basis straight time

---

1. The complaint states that fifty–five (55) employees are involved, although the arbitrator's opinion states that approximately forty–two (42) employees were sent home.

rate of wages, unless he has been notified before leaving his home not to report, and an employee who reports for work and for whom work is available shall receive not less than four (4) hours pay, and if more than four (4) hours are worked in any one full day, he shall receive not less than a full day's pay. Exceptions, however, shall be when strike conditions make it impossible to put such an employee to work, or when stoppage of work is occasioned thereby, or when an employee leaves work of his own accord. When conditions set forth in this paragraph occur on an overtime day, or on shift work, the premium rate shall be paid."

The arbitrator concluded that there was work "available" under the terms of the agreement, but that the action of Union members was a "direct and proximate cause of the work stoppage." In concluding that the employees should not receive compensation for the 1.2 hours of lost wages, the arbitrator made a factual determination that "the most logical and probable explanation for the bomb warning was that someone within the bargaining unit or in sympathy with it instigated the call to exert pressure on the Company to come to terms with the Union."

 It is well established that national policy favors resolution of labor–management disputes through the arbitration process and that judicial review on the merits of an arbitrator's decision is extremely narrow. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Accordingly, the Court's review of the arbitrator's decision should not address the merits of arbitrator's findings. Instead, the Court need only determine whether or not the arbitrator's decision is "without foundation in reason or in fact" because the decision does not

"draw its essence from the collective bargaining agreement." See *Enterprise Wheel*, supra; *Local Union No. 787, International Union of Electrical Radio and Machine Workers v. Collins Radio Co.*, 317 F.2d 214 (5 Cir. 1963); *Safeway Stores v. American Bakery & Confectionery Workers*, 390 F.2d 79 (5 Cir. 1968); *Amalgamated Meat Cutters & Butcher Workmen of North America, District Local No. 540 v. Neuhoff Bros. Bakers, Inc.*, 481 F.2d 817 (5 Cir. 1973); *International Association of Heat and Frost Insulators and Asbestos Workers Local 66 v. Leona Lee Corp.*, 489 F.2d 1032 (5 Cir. 1974), *cert. denied*, 419 U.S. 829, 95 S.Ct. 51, 42 L.Ed.2d 54; *International Union of Electrical Radio and Machine Workers, AFL–CIO v. Markle Manufacturing Co.*, 582 F.2d 9 (5 Cir. 1978); *Boise Cascade Corp. v. United Steelworkers of America, AFL–CIO, Local Union No. 7001*, 588 F.2d 127 (5 Cir. 1979); *Alabama Power Co. v. Local Union 391, International Brotherhood of Electrical Workers*, 612 F.2d 960 (5 Cir. 1980); and *New Orleans Steamship Assn. v. General Longshore Workers, ILA Local Union No. 1418*, 486 F.Supp. 412 (E.D., La. 1980).

 In the present case, the collective bargaining agreement was intended to cover the manner in which compensation would be paid for partial work days. Since the collective bargaining agreement did set forth the manner in which compensation would be paid, the compensation dispute was a proper subject for arbitration. The arbitrator concluded that the defendant should prevail on the dispute because he found that the Union should be held responsible for the work stoppage which was precipitated by the bomb threat. In so doing, the arbitrator found that the previously quoted provisions of the bargaining agreement were not controlling under these facts. The arbitrator reasoned that a contrary finding would establish a precedent whereby "any mischief maker with access to a telephone could drive the Corporation out of business with threats of one sort or another." *General Cable Corp.*, 54 L.A. 696 (Clarence Updegraff). The Court finds

that the arbitrator's decision drew its essence from the collective bargaining agreement and that the factual findings made by the arbitrator were properly within his province and supported by the record of this case. The Court should not, and cannot substitute its interpretation of the contract or its conclusions as to the merits of the case for that of the arbitrator where, as in this case, the arbitrator's decision is supported by the evidence presented at the arbitration hearing.

Therefore, the Court finds under the facts of this case that the arbitrator's decision should be affirmed. Accordingly, judgment shall be entered in favor of Nichols Construction Corporation dismissing plaintiff's suit at plaintiff's cost with prejudice.