RYAN-WALSH STEVEDORING CO., INC.

v.

GENERAL LONGSHORE WORKERS UNION, LOCAL NO. 3000 OF The INTERNATIONAL LONGSHOREMEN'S ASSOCIATION et al.

Civ. A. No. 81–192.

United States District Court, E. D. Louisiana.

March 6, 1981.

Robert B. Mitchell, Kullman, Lang, Inman & Bee, New Orleans, La., for plaintiff.

David E. Walker, Alvin J. Bordelon, Andrew P. Carter, Monroe & Lemann, New Orleans, La., for New Orleans Steamship Ass'n.

Victor H. Hess, Jr., Dennis Angelico, Hess & Washofsky, New Orleans, La., for union defendants.

## MEMORANDUM AND ORDER

SEAR, District Judge.

Plaintiff Ryan-Walsh Stevedoring Company, Inc. brings this action for equitable relief against the New Orleans Steamship Association (NOSSA), New Orleans Locals 3000 and 1497 of the International Longshoremen's Association (ILA) and the ILA itself. In its complaint, Ryan-Walsh seeks (1) an order setting aside an arbitration award issued by John J. McAulay on January 12, 1981; (2) an injunction staying enforcement of the arbitrator's award; and (3) an injunction forbidding the defendants from seeking to enforce the provisions of a collective bargaining agreement against Ryan-Walsh. Plaintiff's action is asserted pursuant to the court's federal question jurisdiction under 28 U.S.C. §§ 1331 and 2201, and § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. NOSSA and the New Orleans locals have asserted counterclaims against the plaintiff seeking enforcement of the arbitrator's award. The action

was tried before the court without a jury on February 9, 1981.

The dispute which was submitted to arbitration concerned Ryan-Walsh's hiring of members of two Baton Rouge ILA locals to perform stevedoring work at a Ryan-Walsh work site on the Mississippi River at Convent, Louisiana, in apparent contravention of a collective bargaining agreement between NOSSA and the two New Orleans ILA locals that are defendants in this action. Plaintiff is a member of NOSSA, which is expressly authorized by its members to act as their collective bargaining agent in negotiating and executing labor contracts covering wages, hours and conditions of employment with the New Orleans locals. Acting on behalf of Ryan-Walsh and its other members, NOSSA has entered a series of collective bargaining agreements with the New Orleans locals dating back to 1959. The agreements with particular relevance to this case covered October 1, 1977 through September 30, 1980 and October 1, 1980 through September 30, 1983. These contracts provided that the agreements

> shall govern the payment of wages, working conditions, hours, and other related matters in connection with . . . work performed by employees of the above-listed employers at the Port of New Orleans and all other terminals and facilities on the Mississippi River and adjacent or connecting waterways extending from the Gulf of Mexico up to the Port of Baton Rouge (Ascension—St. James Parish Line)—includes Gramercy but excludes Burnside; also includes Grand Isle, Louisiana, and such work when performed in the Gulf of Mexico off the mouth of the Mississippi River.

Each of the agreements provided for a grievance procedure which culminated in final and binding arbitration by a member of a panel of arbitrators agreed upon by the parties. The arbitration clause provided in part that the parties

> accept the principle that any dispute involving the interpretation or application of the terms of this Agreement shall be resolved in an orderly and expeditious

> manner (pursuant to the grievance procedure). . . .

> The arbitrator's authority shall be limited to interpretation and application of the terms of this Agreement. . . . The arbitrator shall have no authority to render decisions which have the effect of adding to, subtracting from, or otherwise modifying the terms of this Agreement. The decision of the arbitrator shall be final and binding on both parties.

In the late summer and early fall of 1980, Ryan-Walsh decided to undertake work at a facility at Convent. According to the terms of its existing NOSSA contract with the New Orleans locals, Ryan-Walsh was obligated to hire members of the New Orleans locals to perform the work at Convent since Convent is located downstream of the Ascension—St. James Parish line, the work boundary provided in the contract. Meanwhile, however, on September 5, 1980, the executive council of the ILA met in Bal Harbour, Florida, and determined that its Baton Rouge locals, and not the New Orleans locals, would have jurisdiction over the Convent site if certain conditions were met. On October 1, 1980, the collective bargaining agreement between NOSSA, acting as Ryan-Walsh's agent, and the New Orleans locals covering the Convent work was renewed. Three weeks later, in an October 22, 1980 telegram from ILA vice president J. H. "Buddy" Raspberry, Ryan-Walsh was advised that a committee of the ILA executive council had determined that the Baton Rouge locals, and not the New Orleans locals, have authority to negotiate contracts for the Convent area as long as the contracts negotiated were not "inferior to New Orleans." Acting on this information, Ryan-Walsh executed a collective bargaining agreement with the Baton Rouge locals on November 1, 1980 and performed its initial stevedoring work at the Convent facility shortly thereafter. As a result of this action, the New Orleans locals filed a grievance against NOSSA. A hearing on the grievance, at which Ryan-Walsh was represented by separate counsel, was conducted by the arbitrator on November 24, 1980, and his decision in favor of the New Orleans locals was issued on January 12, 1981.

Ryan-Walsh contends in this action that the arbitrator's award should be vacated because the collective bargaining agreement on which the arbitrator based his jurisdiction to decide the grievance was invalid. Ryan-Walsh contends the contract was illegal because (1) Ryan-Walsh never gave NOSSA the authority to negotiate collective bargaining agreements in a specific geographical area, but only with particular labor unions, and (2) pursuant to the directive of the ILA executive council, the New Orleans locals had no authority to negotiate the 1980–83 renewal contract insofar as it purports to apply to work in the Convent area. Ryan-Walsh argues that since neither NOSSA nor the New Orleans locals had any legal authority to negotiate collective bargaining agreements for Convent, the contract upon which the arbitrator based his jurisdiction is invalid and the arbitrator acted beyond his authority in deciding the grievance.

The defendants, on the other hand, contend in their counterclaims that the contract between NOSSA and the New Orleans locals was valid, and that the arbitrator had jurisdiction to decide the grievance submitted to him by the parties. They seek enforcement of the arbitrator's decision arguing that the award drew its essence from the contract.

■■■ Suits for violation of contracts between an employer and a labor organization may be brought in any district court of the United States having jurisdiction of the parties. 29 U.S.C. § 185(a). The court's jurisdiction includes the review of arbitrator's decisions, but its role is a limited one in light of the strong national policy favoring arbitration of labor disputes as a means of promoting harmony in labor-management relations and peaceful settlement of labor disputes. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 566–67, 80 S.Ct. 1343, 1345–46, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Gas*

*Corp.,* 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960). The courts should not generally engage in plenary review of the merits of an arbitrator's award, *see Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976), but they do have a duty to determine whether the arbitrator properly exercised jurisdiction over the dispute. An arbitrator's jurisdiction is drawn from and circumscribed by the arbitration clause in the collective bargaining agreement between the parties, and he can bind them only on issues which they have contractually agreed to submit to him. *See New Orleans Steamship Association v. General Longshore Workers, Etc.,* 626 F.2d 455, 467 (5th Cir. 1980). Whether the arbitrator has properly exercised his jurisdiction within the bounds of a particular contract is a question for judicial determination. *Id.*

■■■ In determining whether the arbitrator has properly exercised jurisdiction, the court initially must determine whether there is a valid contract between the parties. *See Torrington Co. v. Metal Products Workers Union Local 1645,* 347 F.2d 93, 96 (2d Cir.), *cert. denied,* 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). The parties' duty to arbitrate is wholly contractual, and the jurisdiction of the arbitrator depends exclusively on the contractual grant of authority given him by the parties. *See International Brotherhood of Teamsters, Etc. v. Western Pennsylvania Motor Carrier Ass'n,* 574 F.2d 783, 787 (3d Cir.), *cert. denied,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978); *Torrington Co. v. Metal Products Workers Union Local 1645, supra,* 347 F.2d at 96; *Proctor & Gamble Independent Union v. Proctor & Gamble Mfg., Co.,* 312 F.2d 181, 184 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). Therefore, unless there is a valid contract existing between the parties, the arbitrator has no authority or jurisdiction to determine disputes. If a valid contract does exist between the parties, the court must decide if the parties have agreed in their contract to submit the particular issue or controversy to arbitration. *See New Or-*

leans Steamship Association v. General Longshore Workers, Etc., 626 F.2d at 467; *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir. 1980). In this case, the parties do not dispute that if the contract was valid, the particular controversy was arbitrable.

All parties to an arbitration hearing must be given the opportunity to be heard and to present material evidence, *Wright-Bernet, Inc. v. Amalgamated Local Union No. 41,* 501 F.Supp. 72, 74 (S.D.Ohio 1980), and the arbitrator did so in this case. In addition to the various contracts between NOSSA and the New Orleans locals and the result of the previous steps in the arbitration procedure, the arbitrator allowed Ryan-Walsh to submit the minutes of the ILA executive council meeting of September 5, 1980, letters between ILA officials and officials of the Baton Rouge and New Orleans locals, the telegram from Raspberry to Ryan-Walsh, and the contract between Ryan-Walsh and the Baton Rouge locals. Certainly, the arbitrator had sufficient evidence before him as a result of the arbitration hearing to determine that he had jurisdiction over the dispute. All the evidence that was before the arbitrator was submitted to me at trial as a joint exhibit, and I conclude that the arbitrator properly exercised jurisdiction over the dispute. I agree with the arbitrator's implicit finding that the contract between NOSSA and the New Orleans locals was valid and that Ryan-Walsh, as a member of NOSSA, was bound by the contract.

Ryan-Walsh had given NOSSA broad authority to act as its collective bargaining agent with the New Orleans locals without geographical limits. There is nothing in the record indicating that Ryan-Walsh made any attempt to cancel that authority or limit it in any way. The minutes of the ILA executive council meeting of September 5, 1980 indicate that the Baton Rouge locals were to have jurisdiction over the work at Convent only if certain conditions and stipulations about the comparability of the New Orleans and Baton Rouge contracts were met. There is nothing in the record showing that at the time NOSSA renewed its contracts with the New Orleans locals and Ryan-Walsh entered its contract with the Baton Rouge locals, those conditions had been met. The testimony of Alcee Honoree, president of one of the New Orleans locals, given at the arbitration hearing indicates that the New Orleans locals understood that the executive council's directive was effective only if certain conditions were met, and those contracts with NOSSA were renewed. A letter dated October 27, 1980 from the presidents of the New Orleans locals to ILA President Thomas W. Gleason supports this testimony. Thus, when Ryan-Walsh entered its contract with the Baton Rouge locals on November 1, 1980, it already had a valid contract through NOSSA with the New Orleans locals covering the same work at Convent. All of this evidence was before the arbitrator, who properly refused to decide the jurisdictional dispute between the New Orleans and Baton Rouge locals and correctly concluded that he had jurisdiction to determine the particular contractual dispute submitted to him by the parties.

Having determined that the arbitrator properly exercised jurisdiction under the contract, I also conclude that his award should not be disturbed. When a court reviews an arbitrator's decision in an action to set aside or enforce the award, it should not test the award "by judicial review of the legal principles applicable or the application of some sort of clearly erroneous test to the findings of fact. The award need only draw its essence from the collective bargaining agreement." *New Orleans Steamship Association v. General Longshore Workers, Etc., supra,* 626 F.2d at 468; *see United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. 597, 80 S.Ct. at 1361; *United Association of Journeymen, Etc. v. Nichols Construction Corp.,* 502 F.Supp. 465, 467 (M.D.La.1980) *and cases cited therein.* In this case, the arbitrator's award clearly draws from the essence of the collective bargaining agree-

ment to which Ryan-Walsh was a party through its NOSSA membership. The arbitrator relied upon the contractual provision stating that the agreement applied to work performed on the Mississippi River from the Gulf of Mexico to the Ascension—St. James Parish line, an area that includes the Convent site in dispute. When Ryan-Walsh failed to hire labor from the New Orleans locals and refused to recognize the applicability of the contract to the Convent work, the question of whether it was in violation of its contract was clearly one for the arbitrator, who properly based his decision upon express provisions of the contract.

Ryan-Walsh has argued throughout the arbitration process and at times in this judicial proceeding that the real issue is the jurisdictional dispute between the New Orleans and Baton Rouge locals over who is to perform the work at Convent. Neither the arbitration proceeding nor this judicial action to set aside or enforce the arbitration award is the proper forum for determination of that issue. Instead, the jurisdictional issue is properly decided in a proceeding before the National Labor Relations Board pursuant to Section 10(k) of the Act, 29 U.S.C. § 160(k). The parties have noted that such a proceeding is presently pending before the NLRB, and I recognize that should the NLRB decide the jurisdictional issue in a manner which differs from the arbitration award, the decision of the NLRB will take precedence and my enforcement order must be modified. *See Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964); *General Warehousemen & Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282, 1292 (5th Cir. 1978), *cert. denied*, 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 (1979); *New Orleans Typographical Union v. N.L.R.B.*, 368 F.2d 755, 767 (5th Cir. 1966). Until that time, however, the NLRB proceedings pose no barrier to my enforcement of the arbitration award. Accordingly,

IT IS ORDERED that there be judgment for the defendants dismissing the complaint of plaintiff, Ryan-Walsh Stevedoring Co., Inc., with prejudice, at its cost.

IT IS FURTHER ORDERED that there be judgment for the defendants, New Orleans Steamship Association, General Longshore Workers Union, Local No. 3000, ILA, AFL–CIO, and New Orleans Clerks and Checkers Union, Local No. 1497, ILA, AFL–CIO, granting their counterclaims for enforcement of the arbitrator's award of January 12, 1981.

Let judgment be entered accordingly.