In re Harold S. JOHNSTON, Jr., and Nancy E. Johnston, James J. Santelli and Marie Santelli, Maynard C. Coward and Margaret E. Coward, Debtors.

Peter J. LIVOLSI, et al., Plaintiffs,

v.

Harold S. JOHNSTON, Jr., James J. Santelli, and Maynard C. Coward, Defendants.

Bankruptcy Nos. 81–988, 81–1635 and 81–990.
Adv. Nos. 81–2011, 81–2010 and 81–2012.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 29, 1982.

Joel M. Helmrich, Pittsburgh, Pa., for Union.

F. Scott Gray, Pittsburgh, Pa., for Coward and Johnston.

Christopher M. Beck, Pittsburgh, Pa., for Santelli.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

In these adversary proceedings, the Plaintiffs are asserting that certain debts of the Debtors are not dischargeable because they arise from defalcation while the Debtors were acting in a fiduciary capacity.

## STATEMENT OF THE FACTS

The Debtors, James J. Santelli, Harold S. Johnston and Maynard C. Coward, were all officers of a debtor corporation known as Mideastern Fabricators and Erectors, Inc. (the "Corporation"). The Corporation filed for bankruptcy under Chapter 11 on April 14, 1981. Santelli, Johnston and Coward filed their individual petitions in bankruptcy on June 24, 1981, April 14, 1981 and April 14, 1981 respectively. The testimony revealed that certain payments due to the Plaintiffs pursuant to a collective bargaining agreement had not been made. These included payments for dues and payments for fringe benefits, which included payments for health insurance and pension. The principal amount due by the Corporation at the time of trial was $17,353.91. Of this amount, the amount owed for union dues was $2,703.26.

The testimony by Johnston revealed that all the officers were aware of these obligations, although only Santelli had signed the collective bargaining agreement. Further, none of the officers was aware of the agreements of trust for the pension fund and the welfare fund that had been incorporated in the collective bargaining agreement. Johnston testified that the payments received on each job on which the Corporation did work were placed in a general corporate fund. These general fund monies were transferred to a Payroll Account in another bank to pay the wages of individual union members. Johnston related that the pay stubs of the individual workers recited that dues had been deducted from the paychecks prior to payment. On examination the Plaintiffs attempted to have Johnston admit that this money was withheld and used for a purpose other than paying union dues. Johnston, however, stated that this money may or may not ever have existed in the general corporate account. He also stated that the first job in which the company engaged was bid as a non-union job and that there was no prior allocating of payments for the union. He admitted that a shortage developed when payments to the union had to be made. There was testimony that the payments to the welfare and pension funds were to be contributions from the company and were not items deductible from a union member's individual wages. Johnston also admitted that payments were made to materialmen, suppliers and others at this time. The Corporation also did not pay a large amount of withholding tax due the Internal Revenue Service.

There was testimony that Santelli had left the company in September of 1980, some six months before the filing of the bankruptcy.

## DISCUSSION

Section 523(a)(4) of the Bankruptcy Code states:

(a) a Discharge under 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity ...;

The Plaintiffs in this case allege that the debts owed by the Debtors herein should be declared nondischargeable pursuant to this provision.

Plaintiffs rely on a statute of the Commonwealth of Pennsylvania to establish the individual liability of these corporate officers and to further hold them to be fiduciaries for the payments due the union under the collective bargaining agreement. The Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.3(b) (1981), states:

(b) Fringe benefits and wage supplements. Every employer who by agreement deducts union dues from employee's pay or agrees to pay or provide fringe benefits or wage supplements, must remit the deduction or pay or provide the fringe benefits or wage supplements, as required, within 10 days after such payments are required to be made to the union in case of dues or to a trust or pooled fund, or within 10 days after such payments are required to be made directly to the employee, or within 60 days of the date when proper claim was filed by the employee in situations where no required time for payment is specified.

Plaintiffs state that this section is applicable to these Debtors, as officers of the corporation by virtue of Section 260.2a of this statute (43 P.S. § 260.2a (1981), which defines employer as follows:

"Employer". Includes every person, firm, partnership association, corporation, receiver or other officer of any of the above mentioned classes employing any person in this Commonwealth.

Plaintiffs cite three cases in Pennsylvania that have held there is a personal liability for corporate officers pursuant to this statute. See *Carpenter's Health and Welfare Fund of Philadelphia and Vicinity v. Kenneth B. Ambrose, Inc.,* C.A. 79–1224 (E.D.Pa. July 11, 1980); *Local 274, Hotel and Restaurant Employees v. Scotts-Penn-Towers, Inc.,* C.A. 79–388 (E.D.Pa. July 11, 1980); *Ward v. Whalen,* 18 D.C.3d 710, 129 P.L.J. 377 (1981). This Court agrees with these cases and that these debtors are or can be held to be personally liable for the amounts not paid under the collective bargaining agreements.

■ However, in order for the liabilities to be nondischargeable under the Bankruptcy Code, Plaintiffs must show that the Debtors were fiduciaries of the employees for purposes of the payment of these funds. The Plaintiffs argue that the statute itself creates the fiduciary relationship and that the subsequent non-payment of the funds, whether intentional or not, provides the necessary defalcation under Section 523(a)(4). However, the Court holds that under the Bankruptcy Code the fiduciary duties must be express. *Collier on Bankruptcy,* 15th Edition, Section 523.14 on page 523–99 states:

The qualification that the debtor be acting in a fiduciary capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trusts *ex maleficio* that may be imposed because of the very act of wrongdoing out of which the contested debt arose. There is no reason to believe section 523(a)(4) will be construed otherwise. Thus, unless there be some additional fact, section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, brokers, factors, partners and other persons similarly situated. Also, the commonplace frauds of the ordinary debtor in disposing of his property so as to hinder, delay, or defraud his creditors are not within clause (4). Nor does the phrase "in a fiduciary capacity" include or apply to trusts which are merely implied by law from contracts.

See also this Court's opinion in *In re Larry J. Truby,* Bankruptcy No. 80–320, Adversary No. 80–440, Memorandum Opinion June 19, 1981, and cases cited therein. Thus this Court concludes that in order for Section 523(a)(4) to be applicable here, the fiduciary relationship between the parties must have been established at the time of the signing of the collective bargaining agreements.

■ The Plaintiffs first presented the Court with two declarations of trust, one for the pension fund and one for the welfare fund. These, however, do not establish the debtors as trustees of these funds but merely as parties contractually liable for payment to the Trustee. Secondly, the Plaintiffs argue that other bankruptcy courts in other states with similar statutes have held the liabilities established by those statutes nondischargeable in bankruptcy. The Plaintiffs cite *In re Schultz,* 9 B.R. 35 (Bkrtcy., E.D.Wis.1980) as standing for this

proposition. However, the Wisconsin statute that imposed the liability expressly provides that the moneys paid to the employer are trust funds held for the benefit of the employees. *In re Schultz*, supra, at 36 n. 1.

In order to create a technical or express trust in Pennsylvania, there must be a res, an intent to create a trust, and a beneficiary. *Sherwin v. Oil City National Bank,* 229 F.2d 835 (1956). A trust without a res is impossible. *Bair v. Snyder County State Bank,* 314 Pa. 85, 171 A. 274 (1934). In this case there was no evidence that a res came into existence. Secondly, there was no showing that the statute intended to create a trust relationship. The Pennsylvania legislature, of course, could create such a trust by statute as Wisconsin has done. However, in the absence of such express legislative action, these debts cannot be held nondischargeable.

An appropriate Order will issue.