**AMALGAMATED COTTON GARMENT & ALLIED INDUSTRIES FUND, Plaintiff,**

**v.**

**J.B.C. COMPANY OF MADERA, INC., Joseph Campolong, Betty Campolong, and David Campolong, Defendants.**

Civ. A. No. 81–1610.

United States District Court, W.D. Pennsylvania.

Jan. 26, 1984.

Alan F. Markovitz, Trevose, Pa., for plaintiff.

Henry C. Woicik, New York City, for defendant.

## OPINION

MANSMANN, District Judge.

Plaintiff Amalgamated Cotton Garment & Allied Industries Fund (the "Fund") brought this action to recover contributions allegedly due the Fund on behalf of the employees of Campo Slacks, Inc. ("Campo Slacks") and J & E Sportswear, Inc. ("J & E Sportswear").[1] The Fund seeks to recover these contributions from Defendants J.B.C. Company of Madera, Inc. ("J.B.C."), Joseph Campolong, Betty Campolong and David Campolong, all of whom are allegedly jointly and severally liable for said contributions. The case was tried before this Court nonjury.[2] We hereby make the

---

1. Campo Slacks and J & E Sportswear were originally named as parties to this action. By letter dated August 27, 1982, Plaintiff voluntarily withdrew Campo Slacks and J & E Sportswear from this lawsuit.

2. In a nonjury trial, the functions of finder of fact and decider of law are merged in the trial judge. As finder of fact, the judge must pass upon the credibility of the witnesses and must draw reasonable inferences from the evidence presented. *Ruiz v. Estelle,* 679 F.2d 1115, 1131 (5th Cir.1982); *Charles Schmitt & Co. v. Barrett,* 670 F.2d 802, 805 (8th Cir.1982). We note for the record that this Court carefully evaluated the credibility of the witnesses based upon, *inter*

following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a):

## FINDINGS OF FACT

The Fund is an "employee benefit plan" within the meaning of § 3(3) of the Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(3).

J.B.C. is a Pennsylvania corporation.

Joseph Campolong, Betty Campolong and David Campolong are officers of J.B.C. and reside in this District.

Joseph Campolong is and was the president and sole shareholder of J.B.C. during all times pertinent to this action. Betty Campolong, wife of Joseph Campolong, is and was the secretary of J.B.C. during all times pertinent to this action. David Campolong, the son of Joseph Campolong, is and was the vice-president of J.B.C. during all times pertinent hereto. None of them, however, are or were the "alter egos" of J.B.C.

On or about October 1, 1973, Joseph Campolong, in his capacity as president of J.B.C., Campo Slacks, J & E Sportswear and Madera Business Systems, Inc., and Betty Campolong, in her capacity as secretary of those corporations, executed Articles of Merger ("Articles") which were filed with the Pennsylvania Department of State on or about January 21, 1974.

Under the Articles, Campo Slacks, J & E Sportswear and Madera Business Systems, Inc. merged into J.B.C., with J.B.C. being the surviving corporation. All assets and liabilities of the merging corporations were transferred or assumed by J.B.C. The employees of Campo Slacks and J & E Sportswear effectively became the employees of J.B.C.

The Articles have remained effective to this date. Thus, Campo Slacks and J & E Sportswear have not legally existed as separate corporate entities since at least January 21, 1974. Further, the former employees of Campo Slacks and J & E Sportswear are and have been employees of J.B.C. since at least 1974.

Nevertheless, Joseph Campolong continued to use the names of the defunct corporations, Campo Slacks and J & E Sportswear, for certain purposes. For example, during the period following the merger, Joseph Campolong executed collective bargaining agreements with the Amalgamated Clothing and Textile Workers Union (the "Union") to cover persons allegedly employed by Campo Slacks and J & E Sportswear. Pursuant to those agreements, Campo Slacks and J & E Sportswear, as the "employers," were obligated to make certain contributions to the Fund on behalf of "their" employees. Quarterly reports were prepared and sent to the Fund for these employees. Mr. Campolong signed the summary sheets which accompanied the reports.

The reports indicate that no contributions were made to the Fund for these employees for the period April 1979 through August 21, 1981 (Campo Slacks) and for the period February 25, 1979 through August 11, 1979 (J & E Sportswear).

The auditor for the Fund audited the "books" of J.B.C. at J.B.C.'s offices, examining records and reports supplied to him by J.B.C. His audit confirmed the delinquency already indicated by the quarterly reports. The total amount in delinquency is $70,191.12.

In the meantime, the Fund, pursuant to the collective bargaining agreements, initiated several arbitration proceedings against Joseph Campolong and J.B.C., as "alter egos" of Campo Slacks and J & E Sportswear, to recover delinquent contributions. The arbitrator found that due notice was given to the parties for each proceeding yet neither Mr. Campolong nor J.B.C. entered an appearance at any of the arbitration hearings.[3]

The arbitrator issued four arbitration awards in which he found Joseph Campo-

---

*alia,* their demeanor on the stand, the possibility of interest, bias and prejudice, and the consistencies and inconsistencies in the testimony.

3. The evidence at trial showed that for each arbitration proceeding, a notice of intention to arbitrate was sent by certified mail to Joseph Campolong and J.B.C. In every instance, the

long and J.B.C. jointly and severally liable for the delinquent contributions. Specifically, the arbitrator found as a factual matter that Joseph Campolong, J.B.C., Campo Slacks and J & E Sportswear constitute a single joint enterprise.[4]

Joseph Campolong and J.B.C. did not move to vacate or to modify any of the arbitration awards until filing a counterclaim to this action more than a year after the fourth arbitration decision.

Joseph Campolong and J.B.C. have failed and refused to pay the amount of the delinquency.

The Fund brought the present action to confirm the arbitration awards pursuant to § 301 of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185. Jurisdiction is also predicated upon ERISA and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Furthermore, the Fund seeks to hold the three individual Defendants liable pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL") 43 P.S. § 260.1 *et seq.* (Purdon 1964).[5]

Defendants have counterclaimed to vacate the arbitration awards. In addition, at trial, the three individual Defendants orally moved for dismissal of the case against them.

We find that Defendants are indeed jointly and severally liable for the amount of the delinquency, $70,191.12, as more fully explained in our conclusions of law.

## CONCLUSIONS OF LAW

### I. RES JUDICATA AND COLLATERAL ESTOPPEL DEFENSES

Defendants contend that the Fund is barred from pursuing this action by the doctrines of *res judicata* and collateral estoppel.[6] According to Defendants, the claim(s) underlying this action have been litigated previously in the New York state courts, the Pennsylvania state courts and certain federal courts.[7]

■ Under the doctrine of *res judicata,* a final judgment on the merits of an action precludes the parties or those in privity with the parties from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

■ For *res judicata* to apply, it is necessary that "between the previous action and the present action there (is) an identity in the thing sued on, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality or capacity of the parties suing or sued." *Davis v. United States Steel Supply,* 688 F.2d 166, 170–71 (3d Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed. 484 (1983), quoting *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 105, 415 A.2d 53, 55 (1980).

■ Under the doctrine of collateral estoppel, a court's decision on an issue of fact or law necessary to its judgment may preclude relitigation of that issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry, supra* at 94, 101 S.Ct. at 414.

■ The doctrine of collateral estoppel will apply when (1) the issue decided in the prior litigation is identical to the issue here, (2) the prior litigation resulted in a final

---

certified mail was marked "unclaimed" and returned to the Fund.

**4.** The evidence showed that upon the issuance of each arbitration award, the Fund mailed a copy of the award to Joseph Campolong and J.B.C. by certified mail. Each arbitration award, as with the notices of intention to arbitrate, was returned unclaimed.

**5.** At trial, the Fund further amended its Amended Complaint to allege, *inter alia,* that J.B.C. and

the three individual defendants are also liable as "employers" under the LMRA and under ERISA.

**6.** Although these defenses have been raised, neither side has briefed the legal issues involved.

**7.** With one exception, Defendants do not identify which New York state courts, which Pennsylvania state courts and which federal courts rendered judgments. For example, Defendants' Exh. No. 5 does not identify the county or the district in which the judgments were rendered.

judgment on the merits, (3) the party against whom the estoppel is asserted is a party, or in privity with a party, to the prior proceeding, and (4) the opportunity to present the claim in the prior proceeding was full and fair. *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974).

The burden of establishing preclusion is placed on the party claiming the defense. 18 Wright, Miller and Cooper, FEDERAL PRACTICE AND PROCEDURE § 4405 at 38 (1981). Ordinarily, sufficient evidence must be introduced to show litigation of the claim or issue involved. *Id.*

In the instant case, the defense of *res judicata* was at least partially resolved by the withdrawal of Campo Slacks and J & E Sportswear from this suit since the record suggests that they were the parties to almost all of the prior judgments. In our previous Opinion on Defendants' Motion to Dismiss, we stated that if the remaining Defendants wished to pursue this defense, they would be required to set forth the pertinent facts with greater clarity and completeness.[8]

Defendants have provided little of the requisite information with the exception of one case. In this regard, the Court of Common Pleas of Clearfield County, Pennsylvania, on May 15, 1981, dismissed an action brought by the Fund against Joseph Campolong pursuant to the Pennsylvania WPCL. By letter dated August 11, 1982, Plaintiff's counsel agreed that the amount sought in the Common Pleas action was included in the amount sought here.

The Court of Common Pleas premised its dismissal on the doctrine of *res judicata*. On July 22, 1983, however, the Superior Court of Pennsylvania reversed the Order of the Common Pleas Court and remanded the case for further proceedings. That case is now pending before the Common Pleas Court awaiting further proceedings.

A judgment that has been reversed on appeal is thereby deprived of all conclusive effect for purposes of both *res judicata* and collateral estoppel. *Moitie v. Federated Dept. Stores*, 611 F.2d 1267, 1269 (9th Cir.1980). *See also* 18 Wright, Miller and Cooper, FEDERAL PRACTICE AND PROCEDURE § 4432 at 303 (1981) ("Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings.").

Hence, the judgment entered by the Clearfield Court of Common Pleas does not bar the instant action nor does it preclude the litigation of any issue contained therein. Further, Defendants have failed to provide the information concerning other prior judgments that is necessary to sustain the defense of *res judicata* or collateral estoppel.

Thus, we must conclude that Defendants have not met their burden on these defenses.

## II. CLAIM UNDER THE FEDERAL ARBITRATION ACT

Plaintiff continues to assert claims against J.B.C. and Joseph Campolong under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "Act") even though we indicated in our previous Opinion that the Act may be inapplicable to the labor-management area.[9]

We again note that in a recent case, the United States Court of Appeals for the Third Circuit strongly suggested that the Act is inapplicable to suits brought to enforce labor arbitration agreements under § 301. *See Service Employees Int'l Union, Local No. 36 v. Office Center Services, Inc.*, 670 F.2d 404, 406–08 n. 6 (3d Cir.1982) (dictum).

8. Specifically, we required the names of the courts, cases and parties; the monies and issues involved; the extent to which the cases coincide with this case in terms of parties, issues and monies; and the resolution of those cases. *See* Opinion of October 20, 1982, n. 15 at 12.

9. Plaintiff's Amended Complaint, setting forth additional claims under the Act, was filed on March 28, 1983 after our decision was issued in October 1982.

Thus, it is possible that § 301 of the LMRA and the cases decided thereunder provide the federal law for the enforcement of labor agreements and that it is unnecessary to resort to the Federal Arbitration Act in these cases. *See Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120*, 559 F.Supp. 875, 879–80 (M.D.Pa.1982). The Act itself expressly excludes "contracts of employment of ... any ... workers engaged in foreign or interstate commerce" from its embrace. *See* 9 U.S.C. § 1.

In light of the above and because the LMRA and ERISA provide sufficient basis for the exercise of this Court's jurisdiction, it is unnecessary to reach any issues raised in connection with the Federal Arbitration Act.

### III. SECTION 301 CLAIM

Defendants assert that the Fund lacks standing to sue under § 301 of the LMRA and that this Court is therefore without subject matter jurisdiction under § 301.

We have already addressed this contention in our previous Opinion. We held that the Fund does have standing to pursue its claim under § 301. Defendant has proffered no cases to the contrary. Furthermore, we perceive no significant distinction between the Fund and its trustees, at least for the purpose of maintaining this suit under § 301. Any concern in this regard

may be remedied by a simple amendment to the Complaint that adds the names of the trustees to the case caption. We will therefore permit Plaintiff to amend the Amended Complaint, adding the names of the trustees to the caption.[10]

### A.

Plaintiff postured this action as an action to confirm or enforce arbitration awards pursuant to § 301 of the LMRA.

■ This Court has the jurisdiction and power to confirm and enforce arbitration awards pursuant to § 301. *See Sheet Metal Ass'n of N.Y. City v. Local Union No. 28 of Sheet Metal Workers*, 301 F.Supp. 553, 555 (S.D.N.Y.1969).

We held in our previous Opinion that we must look to Pennsylvania law to determine the appropriate limitations period(s) for Plaintiff's action to confirm and any action to vacate the arbitration awards.[11] Since Pennsylvania provides a 30-day statute of limitations for actions to vacate an arbitration award,[12] Defendants' counterclaim to vacate the arbitration awards would ordinarily be time-barred.[13]

■ Regardless, we cannot enforce an arbitration award where the evidence does not establish that the parties did in fact receive proper notice and the opportunity

**10.** We note that in a very recent case, *Carpenters Health and Welfare Fund of Philadelphia v. Ambrose*, 727 F.2d 279 (3d Cir.1983), a Fund similar to the one at bar maintained a § 301 action in its own name with the name of the trustee added as trustee *ad litem* (*e.g.*, "CARPENTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY By Robert Gray, Trustee Ad Litem"). It is clear from the Opinion issued by the Third Circuit that the Court considered the Fund to be the named plaintiff. No mention was made of a standing problem in that case. Subject matter can be raised *sua sponte* by the court. *See* Fed.R.Civ.P. 12(h)(3). Certainly, if the Fund's status as the named plaintiff actually destroyed subject matter jurisdiction, the district court and the court of appeals would not have been empowered to adjudicate the merits of the suit. The absence of any mention of such a problem suggests that subject matter jurisdiction may not be affected. Therefore, we believe that any concern with the

use of the Fund's name in the case caption before us can be remedied by including the trustees' names as well.

**11.** *See Western Kraft East, Inc. v. United Paperworkers Int'l Union, Local 375*, 531 F.Supp. 666, 668–69 n. 1 (E.D.Pa.1982).

**12.** *See* 42 Pa.C.S.A. § 7314(b) (Purdon 1981).

**13.** It could be argued that failure to receive notice of the arbitration awards should toll the time for filing actions to vacate. In this event, however, the statute of limitations would at least commence running on the date Defendants did receive notice of the arbitration awards. In this case, we find that Plaintiff's evidence did not establish that Defendants received timely notice of the arbitration proceedings or of the arbitration awards. Nonetheless, the evidence presented at trial did not show when Defendants actually did receive notice of the awards.

to be present at the arbitration proceeding. In this regard, it is axiomatic that all parties to an arbitration hearing must be given an opportunity to be heard, which implies the right to receive notice of the hearing. *See Ryan-Walsh Stevedoring Co. v. General Longshore Workers Union, Local No. 3000*, 509 F.Supp. 463, 467 (E.D.La.1981); *Wright-Bernet, Inc. v. Amalgamated Local Union No. 41*, 501 F.Supp. 72, 74 (S.D. Ohio 1980).

■■■ We believe that failure to receive proper notice precludes our enforcement of the arbitration awards in question regardless of whether Pennsylvania law or New York law applies to our review of the awards.[14] *See generally Local 149, Boot and Shoe Workers Union v. Faith Shoe Co.*, 201 F.Supp. 234 (M.D.Pa.1962).[15]

In *Local 149, Boot and Shoe Workers Union v. Faith Shoe Co., supra*, the court, in an action to enforce an arbitration award, examined the question of whether an *ex parte* arbitration award was void and unenforceable. The court essentially held that an *ex parte* award was enforceable if the other side received notice of the time and place of the hearing but did not request an adjournment or otherwise object. Since the court was considering the matter on a Fed.R.Civ.P. 12(b) Motion to Dismiss, the court took the allegations of the Complaint as stating the facts. The Complaint alleged that formal notice of the hearing had been given to Defendant and Defendant's counsel. The Complaint further alleged that on the day of the hearing, Defendant's counsel was notified again of the arbitration hearing. Upon being informed

by Defendant's counsel that Defendant would not appear or be represented at the hearing, the other party advised that the hearing would proceed without representation by the Defendant. The court therefore concluded that the absent party had waived its right to be present and heard.

In the instant case, we cannot conclude that Joseph Campolong and J.B.C. waived their right to be present and heard at the arbitration hearings since the evidence at trial did not establish that Mr. Campolong and J.B.C. received notice of the arbitration proceedings. In this regard, there is no evidence that personal service was made or that the Fund telephonically contacted Defendants or their counsel regarding the arbitration proceedings. Moreover, the certified notices sent to Mr. Campolong and J.B.C. were never claimed and were therefore returned to the Fund.[16]

Since the evidence does not show that the absent parties received notice of the arbitration hearings, we cannot find that they waived their right to be present. Therefore, we cannot enforce the *ex parte* arbitration awards as requested by the Fund.

#### B.

■■ Although this Court declines to enforce the arbitration awards as requested by the Fund, the Fund may maintain a direct action under § 301 to recover the unpaid contributions from the employer. *See Trustees of the Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp.*, 721 F.2d 451 (3d Cir.1983); *Bugher v. Consolidated X-Ray Service*, 705 F.2d 1426 (5th Cir.1983), *petition for*

---

**14.** Under Pennsylvania law, Defendants' failure to timely file an action to vacate the awards would preclude them from challenging the merits of the arbitration awards. *See Service Employees Int'l Union, Local No. 36 v. Office Center Services, Inc.*, 670 F.2d at 412; *Western Kraft East, Inc. v. United Paperworkers Int'l Union, Local 375*, 531 F.Supp. at 671.

Under New York law, Defendants may make certain challenges to the arbitration awards in an action to confirm brought by the other party even if Defendants failed to file a timely action to vacate the awards. *See* §§ 7510 and 7511 of the New York Civil Practice Law and Rules.

**15.** *See also Truck Drivers, Chauffeurs and Helpers, Local Union No. 384 v. Stearly Motor Freight, Inc.*, 544 F.Supp. 623, 625 (E.D.Pa.1982) (It is unfair to bind a party to an arbitration award "where that party has not had a voice in the proceedings from start to finish.").

**16.** We note in this regard that the certified notices were not marked "refused" as they could have been if Defendants had received them but refused to accept them. Rather, they were marked "unclaimed."

*cert. filed,* 52 U.S.L.W. 3191 (Sept. 20, 1983).[17]

Since we have already found that J.B.C. is and has been the employer of the employees in question, J.B.C. is directly liable under § 301 for the delinquent contributions.

■■■ The three individual Defendants, however, are not liable under § 301 unless they were acting as "alter egos" of J.B.C. *See Carpenters Health and Welfare Fund of Philadelphia v. Ambrose,* 727 F.2d at 283–284. Their status as officers of J.B.C. does not, in and of itself, confer liability. *See id. See also Combs v. Indyk,* 554 F.Supp. 573, 574–75 (W.D.Pa.1982).

"A finding of an alter ego situation is a factual one and must be supported by the record." *Carpenters Health and Welfare Fund of Philadelphia, supra* at 283. The burden of proof rests with the party attempting to pierce the corporate veil. *Id.* at 284. *See also Publicker Industries, Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1069 (3d Cir.1979).

Certain factors are relevant in determining whether the alter ego theory should be used to disregard the corporate entity, including:

> (F)ailure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Carpenters Health and Welfare Fund of Philadelphia, supra* at 284, quoting *United States v. Pisani,* 646 F.2d 83, 88 (3d Cir.1981). Undercapitalization is an additional factor which may be considered. *Id.*

In the instant case, the record before us does not support a finding that any of these factors exist. For example, there is no evidence that any of the individual Defendants took corporate money for their own personal use. Nor is there any evidence that J.B.C. does not maintain corporate records.

Thus, we must conclude that Joseph, Betty and David Campolong are not personally liable under § 301 of the LMRA.

## IV. ERISA CLAIM

Defendants assert, similar to their assertion under § 301, that the Fund lacks standing to sue under ERISA and that this Court is therefore without subject matter jurisdiction under ERISA.

Consistent with our resolution of this issue under § 301, we see little difference between the Fund and its trustees, at least for the purpose of maintaining this suit under ERISA.[18] Nevertheless, we believe the better practice is to include the names of the trustees in the case caption. We will therefore permit Plaintiff to amend the Amended Complaint accordingly.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (1980).

An employer may be sued to redress violations of ERISA or to enforce the terms of an employee benefit plan. *See* 29 U.S.C. § 1132 (1974).

An "employer" is "any person acting directly as an employer, or indirectly in the

---

**17.** We note that the Trust Agreement also permits the trustees to take whatever steps they desire, including the initiation of proceedings at law, in equity or in arbitration, in order to collect employer contributions. *See* Plaintiff's Exh. No. 3.

**18.** *But see Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *Amalgamated Industrial Union Local 44-A Health and Welfare Fund v. Webb,* 562 F.Supp. 185 (N.D.Ill.1983).

interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5) (1974).

A "person" includes "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9) (1974).

Under the definitions provided by ERISA and consistent with our previous findings, J.B.C. is clearly an employer. Therefore, J.B.C. is directly liable under ERISA for the unpaid contributions.

As with § 301, however, the three individual Defendants are not liable unless they were acting as "alter egos" of J.B.C. Their status as officers of J.B.C. does not, in and of itself, confer liability. *See Combs v. Indyk*, 554 F.Supp. at 575. *See also* 29 U.S.C. § 1002(9) (1974). (The definition of "person" omits mention of corporate officers).

■ The same factors used to determine alter ego status under § 301 apply equally well here.[19] Applying those factors, we again find that an alter ego situation does not exist in this case.

Therefore, we must conclude that Joseph, Betty and David Campolong are not personally liable under ERISA.

## V. CLAIM UNDER THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION ACT

Defendants challenge the jurisdictional basis for the Fund's claim under the Pennsylvania WPCL. Defendants also contend that the provisions of the WPCL are preempted by ERISA.

With regard to the preemption argument, the U.S. Court of Appeals for the Third Circuit recently stated, in a similar case, that such a contention was without merit. *See Carpenters Health and Welfare Fund of Philadelphia*, 727 F.2d at 282 n. 5 (dictum).

**19.** *See Carpenters Health and Welfare Fund of Philadelphia*, 727 F.2d at 283–284; *United States*

■ With respect to the jurisdictional challenge, a federal court has the power to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claims have sufficient substance as to confer subject matter jurisdiction on the court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Berry v. Cadence Industries Corp.*, 552 F.Supp. 1284, 1291 (E.D.Pa.1982).

■ In this case, it is clear that the state claim and the federal claims derive from a common nucleus of operative fact. It is also clear that the federal claims have sufficient substance as to confer subject matter jurisdiction on this Court. Indeed, this Court has pendent jurisdiction over the state claim against the individual Defendants even though we did not find them liable under the federal claims because the federal claims against the individual Defendants were non-frivolous and sufficiently substantial as to confer subject matter jurisdiction. *See Kerry Coal Co. v. United Mine Workers*, 637 F.2d 957, 965 (3d Cir.), *cert. denied*, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981); *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478–79 (3d Cir.1979). Hence, we may exercise pendent jurisdiction over the Fund's claim under the Pennsylvania WPCL.

The WPCL permits civil actions against employers to recover unpaid wages, including fringe benefits. *See* 43 P.S. §§ 260.9a and 260.2a (Purdon Supp.1983–84).

The definition of fringe benefits includes "all monetary employer payments to provide benefits under any employee benefit plan" as defined by ERISA. 43 P.S. § 260.2a (Purdon Supp.1983–84).

The definition of employer under the WPCL includes:

*v. Pisani*, 646 F.2d at 88.

every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth.

43 P.S. § 260.2a (Purdon Supp.1983–84).

The first published state court decision to impose civil liability on corporate officers as employers under the WPCL was *Ward v. Whalen,* 18 Pa.D. & C.3d 710 (1981).

The ruling by the Common Pleas Court in *Ward* was followed by the U.S. Bankruptcy Court in *In Re Johnston,* 24 B.R. 685, 686–87 (1982).

Since then, the U.S. Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would find at least the highest ranking corporate officers personally liable for unpaid benefit contributions under the WPCL. *See Carpenters Health and Welfare Fund of Philadelphia,* 727 F.2d at 282–283. In *Carpenters Health and Welfare Fund,* the Court of Appeals upheld the imposition of civil liability on the defendants, Mr. and Mrs. Ambrose, since they occupied corporate executive positions.[20]

In the instant case, there is no question that the individual defendants occupied corporate executive positions. Indeed, the evidence suggests that Joseph, Betty and David Campolong are the only officers of J.B.C.

■ Thus, we must conclude that Joseph, Betty and David Campolong are liable under the Pennsylvania WPCL for the delinquent contributions.[21]

## VI. DAMAGES

In light of our disposition of Plaintiff's federal claims and state claim, the Defendants are jointly and severally liable for the unpaid benefit contributions.

The Defendants are also jointly and severally liable for costs, including reasonable attorney's fees, since both ERISA and the WPCL provide for the award of attorney's fees.[22] *See* 29 U.S.C. § 1132(g)(2)(D) (1980); 43 P.S. § 260.9a(f) (Purdon Supp. 1983–84).

Section 502(g)(2)(B) of ERISA provides for the award of interest. 29 U.S.C. § 1132(g)(2)(B) (1980). Therefore, the Fund is entitled to recover interest on the unpaid contributions but only from J.B.C. since the individual Defendants are not liable under ERISA.

Both ERISA and the WPCL provide for liquidated damages but each uses a different standard. Specifically, ERISA permits the award of liquidated damages in an amount equal to the greater of the interest on the unpaid contributions or as provided for under the employee benefit plan but not in excess of 20 percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C) (1980). The WPCL provides for liquidated damages in an amount equal to 25 percent of the unpaid contributions or $500, whichever is greater. 43 P.S. § 260.10 (Purdon Supp. 1983–84). Therefore, Plaintiff can elect to take liquidated damages as provided by ERISA or can take them as provided by the WPCL.

Accordingly, Plaintiff is entitled to judgment in the amount of the unpaid contributions, namely, $70,191.12, as well as attorney's fees and costs, liquidated damages, and interest against the appropriate party.

20. Mr. and Mrs. Ambrose were the sole officers of the corporate defendant.

21. Although J.B.C. is also clearly an "employer" under the WPCL, the Fund did not bring a claim against J.B.C. under the WPCL. Therefore, we shall limit our finding of liability under the WPCL to the individual defendants.

22. The LMRA makes no provision for attorney's fees. *Sharron v. Amalgamated Ins. Agency Services, Inc.,* 704 F.2d 562, 569 (11th Cir.1983).