518 A.2d 1296

**LABORERS COMBINED FUNDS OF WESTERN PENNSYL-VANIA, As Agent For Peter J. Livolsi, and Albert W. Betler, Trustees Ad Litem, Laborers District Council of Western Pennsylvania Welfare and Pension Funds, the Construction Industry Advancement Program of Western Pennsylvania Fund, and the Laborers District Council of Western Pennsylvania and Its Affiliated Local Unions**

v.

**Amidio MATTEI, Joseph Mattei and Domenic J. Mattei. Appeal of Amidio J. MATTEI and Domenic J. Mattei.**

Superior Court of Pennsylvania.

Submitted Oct. 8, 1986.

Filed Dec. 17, 1986.

400

Paris A. Diamond, Pittsburgh, for appellants.

Gary P. Hunt, Pittsburgh, for appellees.

Before DEL SOLE, KELLY and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of the Court of Common Pleas of Allegheny County entered against the appellants (Amidio and Domenic J. Mattei [1]) in the amount of $44,247.65. We affirm in a case of first impression.

The undisputed facts reveal that the appellants are corporate officers of Mattei Bros., Inc., i.e., Domenic is secretary/treasurer with 49% of the stock and Amidio is president with 50% of the stock.

On October 27, 1982, Domenic, in his capacity as secretary/treasurer of the Corporation, entered into a collective bargaining agreement with the plaintiff/Laborers' District Council of Western Pennsylvania, an AFL–CIO affiliate representing eight (8) local unions. Pursuant to the agreement, the Corporation obligated itself to deduct a fixed percentage of monies from the employees' gross wages (for a Health and Welfare Fund, Pension Fund, Hourly Dues Deduction and Industry Advancement Funds) and remit the amount to a designated bank.

The plaintiff alleged in its complaint that the appellants failed to make the required payments from May through November of 1983. This failure to act, contended the plaintiff, constituted a violation of the collective bargaining agreement and entitled it to interest on the outstanding amount as a result thereof. Further, the plaintiff asserted that the appellants, as "officers and/or agents" of the Corporation, were considered an "employer" under the Pennsylvania Wage Payment and Collection Law (43 P.S. § 260.1 et seq.). Under this designation, urged the plaintiff, the appellants were automatically liable to pay liquidated damages for their default in the amount of 25% of the total remittance due.

The appellants' response was that their bookkeeper embezzled the Corporation's money, in the amount of $374,000, and, thus, the Corporation's ability to meet its obligations under the contract with the plaintiff was severely ham-

---

1. Joseph Mattei, listed as a party-defendant, was held not to be liable by the trial court.

pered. In fact, the Corporation's efforts to satisfy the arrearages due the various funds, with money generated from accounts receivable (estimated at $25,000), proved to be no solution since the current amounts due these same funds, in turn, became delinquent and brought the Internal Revenue Service into the picture. The end result was the Corporation's filing Chapter XI bankruptcy in the Western District of Pennsylvania in an attempt to reorganize and salvage what it could of the business.[2]

Following argument on the case, and the denial of post-trial exceptions, the court entered its order in favor of the plaintiff. The order was reduced to judgment and is questioned on appeal.

The sole issue raised by the appellants at page iv of their brief is, in essence, one of whether, absent any evidence of culpability, the mere retention of a corporate office at the time that wage and pension benefits fall delinquent because of embezzlement activities of a corporate employee is sufficient basis alone to impose personal liability upon any corporate officer under 43 P.S. §§ 260.9a, 260.10.

We begin by observing that Pennsylvania's Wage Payment and Collection Law was promulgated to afford additional means to "an employee, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages". See 43 P.S. § 260.9a(a), (b); *Haft v. U.S. Steel Corp.*, 305 Pa.Super. 109, 451 A.2d 445 (1982); *Todora v. Jones & Laughlin Steel Corp.*, 304 Pa.Super. 213, 450 A.2d 647 (1982). Further, as is relevant herein, the Act defines "wages" to include fringe benefits payable from amounts withheld from the employees' pay by an employer, which itself is defined to encompass a corporation or any agent or officer of a corporation employing any

**2.** As an aside, we note that recoupment (in the form of restitution—$75,000) was secured on behalf of the Corporation following the bookkeeper's conviction of embezzlement in February of 1985 in the Court of Common Pleas of Allegheny County.

Also, although the question of what effect the Corporation's filing of a voluntary petition in bankruptcy might have on its contract is not before us, we observe that the matter is thoroughly covered at 18 Williston on Contracts § 1980 et seq. (1978).

person in this Commonwealth. 43 P.S. § 260.2a. Thus, there can be no dispute that Domenic and Amidio, as secretary/treasurer and president, respectively, of Mattei, Bros., Inc., would be considered an "employer" under the language of the Act.

As for an employer who obligates himself by agreement, as was the case here, to deduct monies from employees' pay for fringe benefit purposes, the Act requires that the employer *must* remit the deductions within a prescribed period. 43 P.S. § 260.3(b). Failure to do so, as recited earlier, entitles the employee(s) or the(ir) representative to activate the remedial measures provided for under the Act, i.e., the filing of suit in any court of competent jurisdiction or, in the alternative, have the Secretary of Labor and Industry proceed in his stead. 43 P.S. § 260.9a.

The question of liability under the Act is to be gleaned from a persual of the Act as a whole, and, in this effort, we seek to effectuate the intention and purpose of the Legislature by its passage (1 Pa.C.S. § 1921), e.g., to provide an employee with a statutory remedy for an employer's *breach of its contractual obligation* to remit wages. See *Sendi v. NCR Comten, Inc.*, 619 F.Supp. 1577, 1579 (E.D.Pa.1985).

The appellants would have us embrace the argument that the bookkeeper's embezzlement of the Corporation's monies is the equivalent of a "good faith dispute", provided for under the Act, exonerating them from any liability for payment. It is true that in subsection (c) of Section 260.9a and Section 260.10, both provisions allow as a defense to the claim by an aggrieved party for wages the "good faith contest or dispute of any wage claim ... accounting for such nonpayment".[3]

**3.** The respective sections read as follows:

§ 260.9a. Civil Remedies and Penalties

    \*      \*      \*      \*      \*      \*

    (c) The employe or group of employes, labor organization or party to whom any type of wages is payable may, in the alternative, inform the secretary of the wage claim against an employer or former employer, and the secretary shall, unless the claim appears to be frivolous, immediately notify the employer or former employ-

Nowhere in the Act is the aforementioned verbiage defined. However, since the Act is a supplementation to and not a substitute for one's common law cause of action for breach of contract (see *Sendi,* supra), we see no reason why the defenses acknowledged in the law for similar contract claims should not guide us in determining the viability of the appellants' contention to discharge their contractual obligation, the impairment of which was *caused* by the criminal acts of another.

■ Generally, to constitute a good defense to an action based on contract, the matters relied upon must be germane to the cause of action pleaded and must present a legal reason why the plaintiff should not recover. 8 P.L.E. Contracts § 382. A primary example of the nexus necessary between the underlying basis for a suit that is filed and the legal justification in defense of the claim asserted is

er of such claim by certified mail. If the employer or former employer fails to pay the claim or make satisfactory explanation to the secretary of his failure to do so within ten days after receipt of such certified notification, thereafter, the employer or former employer shall be liable for a penalty of ten percent (10%) of that portion of the claim found to be justly due. A good faith dispute or contest as to the amount of wages due or the good faith assertion of a right of set-off or counter-claim shall be deemed a satisfactory explanation for nonpayment of such amount in dispute or claimed as a set-off or counter-claim. The secretary shall have a cause of action against the employer or former employer for recovery of such penalty and the same may be included in any subsequent action by the secretary on said wage claim or may be exercised separately after adjustment of such wage claim without court action.

§ 260.10. Liquidated damages

Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. §§ 260.9a(c), 260.10 (Supp.1986).

*G.A.C. Credit Corp. v. Acme Accordian Studios, Inc.*, 220 Pa.Super. 148, 286 A.2d 678 (1971).

In *Acme*, the creditor/appellant financed the debtor/appellee's purchase of various goods from a third party/franchiser. The third party arranged for the financing to help the appellee operate one of its franchises. After some time, the appellee and the third party terminated their relation, at which time a balance was still due the appellant for merchandise sold by the appellee but never repaid to the appellant. Pursuant to the appropriate documents, the appellant confessed judgment for the unpaid balance. It was opened thereafter on petition of the appellee, which culminated in an appeal to this Court.

The appellee, in its petition to open, admitted the indebtedness and that there was no legal relationship between the third party/franchiser and the appellant. The appellee maintained that all of its financing arrangements with the appellant were made through the third party, and that, therefore, it should be allowed to assert as defenses unliquidated claims which it allegedly had against the third party for credits and breach of contract. This Court refused to adopt the appellee's arguments and reversed the lower court's opening of the judgment. In the course thereof, we stated, as is relevant herein, that:

> The appellee ... claims damages against [the third party] arising out of the latter's breach of their franchise agreement. However, even if appellee has a cause of action for breach of contract against [the third party], this is not a defense on the merits against appellant.[4]

> [4] ... Here, the appellant's cause of action is based solely on the financing agreement while the alleged breach of contract stems from the franchise agreement between appellee and [the third party] ... the transactions are clearly separate.

220 Pa.Super. at 151–52 n. 4, 286 A.2d at 680 n. 4.

Instantly, as in *Acme*, the conduct of a third party will not be permitted to affect the appellants' contractual obligations. Therefore, any impossibility of performance is, we believe, the result of conduct emanating from within the corporate structure, and, as a result, reverts back, as far as

accountability goes, to those best equipped to monitor its inner workings, i.e., the officers. *A fortiori*, a breach of contract, not an excuse for failure to perform, is the correct appellation. See generally *Commonwealth ex rel. v. United States Fidelity & Guaranty Co.*, 314 Pa. 140, 146, 170 A. 686 (1934).

Further, as made mention of in the Restatement (Second) of the Law of Contracts § 261, Comment *e*, "[e]ven if a party contracts to render a performance that depends on some act by a third party, he is not ordinarily discharged because of a failure by that party because this is a . . . risk that is commonly understood to be on the obligor." Nor has the law permitted an obligor to skirt liability under its contract because of its financial condition (see *Robert H. Fox Co. v. Keystone Driller Co.*, 232 F.2d 831, 836 (3rd Cir.1956)), or the negligence of a third party hired by the obligor. *McLouth Steel Corp. v. Mesta Machine Co.*, 116 F.Supp. 689, 692 (E.D.Pa.1953), aff'd 214 F.2d 608 (3rd Cir.), cert. denied, *Hartford Acc. & Indem. Co. v. Foster*, 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687 (1954).

Thus, we see no logic in imposing the brunt of this financial fiasco on those so attenuated from the core of the fault as to be absolved from any wrongdoing, i.e., the union members, and place the obligation on the shoulders of those who make the decisions as to the manner in which the Corporation is managed. The Legislature, in its enactment of the Wage Payment and Collection Law, has not indicated otherwise.[4] See *Ward v. Whalen*, 18 Pa.D. & C.3d 710, 712

---

**4.** Parenthetically, we observe that the appellants' recourse is to seek recoupment from the former corporate employee/bookkeeper. If the appellants pay and, in the future, the errant bookkeeper makes good on her promise to repay the monies taken (see note 2, supra), the appellants' right to repayment will furnish reimbursement. See generally *Commonwealth ex rel. v. United States Fidelity & Guaranty Co.*, 314 Pa. 140, 147, 170 A. 686 (1934). In any event, as has been stated in Volume 2 of the Restatement (Second) of the Law of Contracts in the Introductory Note at page 309, contract liability is strict liability. It is an accepted maxim that *pacta sunt servanta*, contracts are to be kept. In other words, the obligor is therefore liable in damages for breach of contract even if he is without fault and even if circumstances have made the contract more burdensome or less desirable than he

(C.P. Allegheny County 1981), wherein it was written, with regard to personal liability of corporate officers for default under the Act,

> The Legislature had some purpose for including an agent or officer of a corporation employing persons in the Commonwealth within the definition of employer, and the only apparent purpose was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments. Its reason for doing so is obvious. Decisions dealing with personnel matters and the expenditure of corporate funds are made by corporate officers and it is far more likely that the limited funds of an insolvent corporation will be used to pay wages and that a work force will be reduced while the corporation is still capable of meeting its obligations to its employes if personal liability is imposed on the persons who make these decisions.

Accord *Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Ambrose, Inc.,* 727 F.2d 279, 282–83 (3rd Cir.1983); *Amalgamated Cotton Garment v. J.B.C. Co. of Media,* 608 F.Supp. 158, 168 (W.D.Pa.1984); *In re Johnston,* 24 B.R. 685, 687 (1982).

We wish to make one last point. Of those courts which have had occasion to rule on the personal liability of corporate officers in the face of a corporation's failure to make its required contributions to various union funds, as provided for in their collective bargaining agreement, all have, without exception, held the officer(s) of the corporation personally liable, *and they did so without reference to any proof of culpability or scienter as a sine qua non to establishing a contravention of the Act in a civil suit.* See *Ambrose* supra; *Amalgamated Cotton Garment,* supra; *In re Johnston,* supra; *Amalgamated Cotton Garment and Allied Industries Fund v. Dion,* 341 Pa.Super. 12, 491 A.2d 123 (1985).

had anticipated. *Id.* Accord *Monaca Borough v. Monaca Street Railway Co.,* 247 Pa. 242, 93 A. 344 (1915). For the espousal of a view reflective of some acknowledged defenses to a breach of contract, i.e., impossibility, see 6 Corbin on Contracts § 1320 et seq. (1962).

■ Therefore, having been presented with no reasons for meriting a reading of the element of "scienter" into the quantum of proof necessary to warrant a civil [5] redress of an aggrieved party's rights under the Act, we find that the

**5.** On this basis, i.e., the civil action brought by the appellee, we find the quantum of proof necessary to establish a criminal violation of the Act (43 P.S. § 260.11a) is not so easily transposed to a civil suit for damages for breach of contract.

For instance, when dealing with those to be held criminally liable under the Act, subsection (c) of Section 260.11a speaks in terms of an "employer" encompassing "a corporation, the president, secretary, treasurer *or officers exercising corresponding functions"*. The italicized portion has been interpreted in *Commonwealth v. Guigliano,* 351 Pa.Super. 162, 505 A.2d 317 (1986) to require that corporate officers must "exercise at least some functions of their offices" to be held criminally responsible.

However, it will be noted that the civil liability section of the Act (43 P.S. § 260.9a) talks only in terms of the responsibility of the "employer", which does not include the additional element of those who *function* as corporate officers but lack the title customarily associated with the task being performed. Accordingly, we read the language in the two sections (civil vis-a-vis criminal) to denote an intention on the part of the Legislature to treat matters differently, with regard to the quantum of proof necessary to establish a violation of the respective sections, depending upon the type of complaint lodged. Otherwise, there would have been no reason for the Act to elaborate upon the scope of the term "employer" in the criminal portion, given that it was already defined in another section, unless different proof levels were intended. Such a reading gives full effect to every portion of the Act, as we are required to do by law. See 1 Pa.C.S. § 1921(a). Thus, we do not find *Guigliano* to be controlling so as to hold harmless either of the appellants by inquiring into how each *functioned* within the entity.

More importantly, we hold that the matter at bar is to be resolved under contract principles, which, as are applicable to the case at bar, do not look to the breaching party's thought processes in assessing whether the terms of the agreement were met. The appellants' failure to comply with their part of the contract, due in no part to the conduct of the appellee, renders each liable. To hold otherwise would place a hardship upon a party who had no hand in impairing the implementation of the agreement. All matters being equal, we read the statute and the case law to place the onus on the appellants to satisfy their part of the contract.

As always, the parties can relieve themselves in future agreements for such losses by excepting themselves from accountability in the contract, or insuring themselves against such a situation.

We also posit the question of whether the appellants' lack of diligence in supervising their operations, as far as accounting matters are concerned, was a contributing factor in the defalcation of the monies, and, thus, would impede their attempt to allege a supervening act as a defense to their liability. See 6 Corbin on Contracts § 1329 at 346–48 (1962).

appellants' corporate positions exposed them to liability for the corporation's breach of contract with the appellee. We, likewise, refuse to embrace the appellants' contention that the embezzlement of funds should be equated to a "good faith contest" of the "wages" claimed so as to exonerate them from responsibility under Sections 260.9a and 260.10. The reason is evident from the fact that the appellants do not dispute the withholding of monies from the union members' pay due the various funds. Nor do the appellants argue that the appellee has done some act or failed to do an act violative of the collective bargaining agreement and justifying a holding in abeyance of the renumerations owed under the explicit contractual terms.

As a result, as we read the Act in toto, a "good faith contest" should be premised upon some impropriety on the part of the employee/obligee affecting his right to his "wages", in this case pension and other welfare benefits, due him from the obligor. Under the particular circumstances here, we fail to see how the actions of a third party (embezzler) affects a *right* owed a signator to a bilateral agreement which has been faithfully adhered to by the obligee.

Judgment affirmed.