## Yatron v. Lydon

*Byron M. Yatron,* for plaintiffs.

*David A. Binder,* for defendant J. Karl Hilgendorf.

*Charles J. Phillips,* for defendants Julie Buckman, Judy Diffendal, Arthur Grim, Richard Keene, Richard Searfoss, Thomas Siak and Marianna Wolfe.

*Guy A. Donatelli,* for defendants George P. Turner and Janice Robinson.

LIPSITT, *S.J.,* October 12, 1993—

### ISSUE

Are former directors and officers of Shiloh, Inc. employers under the Wage Payment and Collection Law, 43 P.S. §260.1 et seq. so as to render them liable for unpaid wages owed former employees of Shiloh, Inc.?

### BACKGROUND AND PROCEDURAL HISTORY

Shiloh, Inc. was a non-profit corporation which operated facilities for the mentally retarded. Shiloh operated 13 homes in Berks County, staffed by 39 in-

dividuals. Shiloh also operated homes in other counties; specifically, Luzerne and Montgomery.

In the spring of 1982, Shiloh experienced financial difficulties, an apparent result of over expansion and delayed payments from the Department of Welfare. Consequently, in late May and June 1982, the plaintiff-employees were not paid accrued wages.

Plaintiffs filed their fourth amended complaint on September 28, 1984. The Board of Arbitrators held an evidentiary hearing on September 16, 1992 and rendered their decision on September 23, 1992. The board's decision was in favor of plaintiffs and against defendants, Shiloh, Inc., Michael Lydon, Jack Kille, George P. Turner, and Janice D. Robinson in an amount of $23,843. Defendants Turner and Robinson filed their appeal on October 16, 1992. A de novo hearing was held before this court on July 13, 1993. Initially, a trial by jury was requested, but the parties, after an extended discussion, agreed to a waiver, and the matter was then presented to the presiding judge for a decision.

## FINDINGS OF FACT

(1) All plaintiffs were represented at trial by Attorney Byron M. Yatron.

(2) Defendants Buckman, Diffendal, Grim, Keene, Searfoss, Siak and Wolfe were represented at trial by Attorney Charles J. Phillips.

(3) Defendant J. Karl Hilgendorf was represented at trial by Attorney David A. Binder.

(4) Defendants George P. Turner and Janice Robinson were represented at trial by Attorney Guy A. Donatelli.

(5) Defendant Michael J. Lydon did not attend trial nor was he represented at trial by legal counsel.

(6) Defendant Jack Kille did not attend the trial, nor was he represented at trial by legal counsel.

(7) This case is before this court as an appeal from compulsory arbitration pursuant to 42 Pa.C.S. §1301 et seq.

(8) Per section 1311, Pennsylvania Rule of Civil Procedure, an appeal from compulsory arbitration before the Court of Common Pleas is subject to de novo review.

(9) Pursuant to oral stipulation of all parties prior to the commencement of testimony, the evidence at trial was in large part adduced by the testimony of representative witnesses. The plaintiff's case was presented through Judith G. Yatron as representative plaintiff, and Judy Diffendal was called on cross-examination as a representative defendant.

(10) The use of representative witnesses expedited the trial in that all plaintiff-employees and defendant-directors were not called on the stand to provide repetitious testimony.

(11) Accordingly, findings of fact premised upon testimony provided by the representative witnesses will be considered as if each and every plaintiff had testified to the matter in question and as if each and every defendant had testified to the matter in question.

(12) Defendant Shiloh of Berks County, Inc., also known as Shiloh, Inc., was at all times relevant to this litigation a non-profit corporation engaged in the business of operating group homes for the mentally retarded. (N.T. 44.)

(13) In 1981-82, Shiloh operated 13 community living arrangment group homes in Berks County, Pennsylvania, which served 39 residents. (N.T. 45.)

(14) The Community Living Arrangement Homes are also known as CLA's. (N.T. 45.)

(15) Shiloh, Inc. also operated facilities called Intermediate Care Facility Group Homes for the Mentally Retarded.

(16) Intermediate Care Facility Group Homes are also known as ICF/MR's.

(17) In 1982, Shiloh operated an ICF/MR in Luzerne County.

(18) In 1982, Shiloh operated 5 ICF/MR's in Montgomery County. (Trial exhibit 19.)

(19) The plaintiffs are all former employees of Shiloh, Inc.'s Berks County program. (N.T. 46.)

(20) The termination dates of the plaintiffs with respect to their employment at Shiloh, Inc. are as follows:

1) Judith G. Yatron, June 25, 1982; 2) Cheryl Worley-Englehart, June 25, 1982; 3) Debra J. Blank, June 11, 1982; 4) Steven C. Cozzone, Unknown; 5) Allison G. Hawthorne, September 30, 1982; 6) Lisa Koller Sangiacomo, August 1982; 7) Lori A. Mentzer, September 30, 1982; 8) Ray Rice, August 1982; 9) Linda M. Simpkins, September 30, 1982; 10) Karen Storm, unknown; and 11) Robert T. McKee, Jr., unknown. (N.T. 39-41.)

(21) The defendants are all former directors and/or officers and/or agents of Shiloh, Inc. A list of the positions held by defendants is attached hereto, marked exhibit A and incorporated by reference herein.

(22) The plaintiffs assert that in late May and early June of 1982 they were not paid accrued wages. (N.T. 46.)

(23) The plaintiffs assert when they terminated their employment with Shiloh, Inc., they were not paid accrued vacation pay. (N.T. 56.)

(24) Attached hereto and marked as exhibit B is a wage claim summary submitted by plaintiffs. All parties have stipulated to the values of each plaintiff's claim.

(25) Defendant Michael J. Lydon was the executive director and a member of the executive committee until July 8, 1982. After July 8, 1982, defendant Lydon was the executive director and secretary of Shiloh, Inc. (N.T. 155-156.)

(26) Defendant George P. Turner was the president of Shiloh, Inc. after July 8, 1982 until his resignation on November 1, 1982. (N.T. 156, 218-219.)

(27) Defendant Jack Kille was the chairman of the board of directors, a member of the executive committee, and the last meeting of the board he attended was on September 16, 1982.

(28) Defendant Tom Siak was the secretary, member of the board of directors and a member of the executive committee of Shiloh, Inc. The last meeting of the board of directors attended by him was September 16, 1982. (N.T. 156.)

(29) Defendant Janice Robinson was the treasurer of Shiloh, Inc. after July 5, 1982. (N.T. 156.)

(30) Defendant Judy Diffendal was the vice-chairman of the board of directors and a member of the executive committee of Shiloh, Inc. Her written resignation from these positions was accepted by the board of directors of Shiloh, Inc. on September 16, 1982. (N.T. 157.)

(31) Defendant J. Karl Hilgendorf was the treasurer, a member of the board of directors, and a member of the executive committee of Shiloh, Inc. Defendant Hilgendorf's written resignation from these positions

was accepted at the September 16, 1982 meeting of the board of directors. (N.T. 157.)

(32) Defendant Arthur E. Grim was a member of the board of directors and a member of the executive committee. The last meeting of the board of directors of Shiloh, Inc. attended by him was on September 16, 1982. (See exhibits 3-13 re: Executive committee, exhibit 14.)

(33) Defendant Julie Buckman was a member of the board of directors. The written resignation of defendant Julie Buckman as a member of the board of directors was accepted at the September 16, 1982 meeting of the board. (N.T. 158, exhibit 14.)

(34) Defendant Richard Searfoss was a member of the board of directors. His written resignation was accepted at the meeting of the board of directors on September 16, 1982. (N.T. 158, exhibit 14.)

(35) Defendant Richard Keene was a member of the board of directors of Shiloh, Inc. His written resignation from the board was accepted at the meeting of September 16, 1982. (N.T. 158, exhibit 14.)

(36) The board of directors met monthly. (N.T. 82.) The executive committee of the board of directors met as needed. (N.T. 82.)

(37) On October 8, 1981, the executive committee of Shiloh, Inc. held a meeting. The minutes of the meeting were marked as exhibit 3 and were admitted into evidence.

(38) The persons in attendance at the October 8, 1981 meeting of the executive committee were Jack Kille, Reverend Sywenki, Jim Rodgers, Judy Diffendal, Willie Conley, Dave Harris (consultant), and Michael Lydon (executive director). (Exhibit 3.)

(39) At the October 8, 1981 meeting, the following occurred:

"(a) Vice chairman Judy Diffendal appointed Jim Rodgers to serve as an interim member of the executive committee.

"(b) A motion was made to contract with Agents Consolidated for board liability insurance for the remainder of the fiscal year 1981-1982 and was unanimously approved by vote of the committee.

"(c) A motion to change the corporate name to Shiloh, Inc. at the same time as a proposed corporate address change was unanimously carried by vote of the executive committee.

"(d) The treasurer's report was received and unanimously accepted by the executive committee.

"(e) Defendant Diffendal made a motion to have a resolution drafted for Michael Lydon to sign Montgomery County ICF/MR contracts which motion was unanimously carried by vote of the committee." (Exhibit 3.)

(40) A meeting of the executive committee of Shiloh, Inc. was held on November 12, 1981. A copy of the minutes of that meeting was marked exhibit 4 and admitted into evidence.

(41) The persons in attendance at the executive committee meeting on November 12, 1981 were Judy Diffendal, Nellie Conley, J. Karl Hilgendorf, Tom Siak, Dave Harris (consultant), Michael Lydon (executive director) and Diane Hall (secretary). (Exhibit 4.)

(42) At the November 12, 1981 meeting, the following occurred:

"(a) A motion was made to select a new secretary at the next full meeting of the board of directors to replace Merrill Sywenki, who resigned from the board.

The motion was unanimously carried by vote of the committee.

"(b) A motion was made by defendant Siak to recommend the outlying areas be searched for potential board members and that the appropriate compensation for travel be explored. This motion was carried unanimously.

"(c) The executive committee was informed the ICF/MR in Kingston, Luzerne County, had opened.

"(d) The executive committee was informed Michael Lydon met with Frank Innacola and the lending bank is willing to work with Shiloh, Inc. with regard to amortization of the costs for ICF/MR programs. (Exhibit 4.)

"(e) The costs which were to be amortized were start-up costs for ICF/MR programs." (N.T. 95.)

(43) A meeting of the executive committee of Shiloh, Inc. was held on February 11, 1982. The minutes of that meeting were marked exhibit 5 and admitted into evidence.

(44) The persons in attendance at the meeting of February 11, 1982 were Jack Kille, Judy Diffendal, Tom Siak, J. Karl Hilgendorf, Arthur Grim, David Harris, and Michael Lydon. (Exhibit 5.)

(45) The following events occurred at the February 11, 1982 meeting of the executive committee:

"(a) Defendant Siak nominated defendant Hilgendorf for secretary, which nomination was seconded by Judy Diffendal and unanimously carried by vote of the executive committee.

"(b) Defendant Hilgendorf nominated defendant Siak for treasurer, which nomination was seconded by defendant Diffendal and unanimously carried by vote of the executive committee.

"(c) Nellie Conley was nominated by defendant Siak as a member-at-large to serve on the executive committee which nomination was seconded by Judy Diffendal and unanimously carried by vote of the executive committee.

"(d) Defendant Wolfe was nominated as a member-at-large of the executive committee by defendant Diffendal, which nomination was seconded by defendant Hilgendorf and unanimously carried by vote of the executive committee.

"(e) The board was informed by David Harris that defendant Hilgendorf was requested to assist in locating other banks who may be interested in Shiloh, Inc.'s loaning package, since the National Bank of Boyertown was showing great reluctance." (Exhibit 5.)

(46) An annual meeting of the board of directors of Shiloh, Inc. was held on February 18, 1982. A true and correct copy of the minutes of said meeting was marked exhibit 6 and admitted into evidence.

(47) The following persons were in attendance at the annual meeting of the board of directors: Jack Kille, Mary Lou Keiser, Tom Siak, Judy Diffendal, Karl Hilgendorf, Nellie Conley, Julie Buckman, Mike Lydon, David Harris, Miriam Sanchez (secretary). (Exhibit 6.)

(48) At the board meeting of February 18, 1982, the following occurred:

"(a) Defendant Kille made a motion to accept the following persons for 'officer' positions; Tom Siak/secretary; J.Karl Hilgendorf/treasurer; Nellie Conley/member-at-large; Marianna Wolfe/member-at-large; the motion was carried unanimously by vote of the board.

"(b) Defendant Diffendal made a motion to accept certain changes to the personnel policy which motion

was seconded by defendant Siak and unanimously carried by vote of the board of directors.

"(c) Defendant Lydon asked the board to accept Mr. David Harris' (consultant) report on his services rendered as the annual report of Shiloh, Inc. This motion was unanimously carried by vote of the board.

"(d) Defendant Diffendal made a motion to accept the resignation of two members of the board which was seconded by defendant Buckman and unanimously carried by vote of the board." (Exhibit 6.)

(49) On April 8, 1982, the executive committee of Shiloh, Inc. held a meeting. The minutes of that meeting were marked at trial as exhibit 7 and were admitted into evidence.

(50) The following persons were in attendance at the executive committee meeting of April 8, 1982; Jack Kille, Judy Diffendal, Karl Hilgendorf, Nellie Conley, Michael Lydon, and David Harris. (Exhibit 7.)

(51) At the April 8, 1982 executive committee meeting, the following occurred:

"(a) Defendant Michael Lydon informed the committee that three sites in Montgomery County had been offered to Shiloh, Inc. as of July 1, 1982.

"(b) Defendant Diffendal motioned to approve the acquisition of the Montgomery County sites, which motion was unanimously carried by vote of the executive committee.

"(c) Defendant Diffendal made a presentation regarding Shiloh's ICF/MR projects in Montgomery County.

"(d) The executive committee received the treasurer's report which advised them that in the first nine months of fiscal year 1981-1982 Shiloh, Inc. expended $656,125, which sum was $209,589 greater than the

$608,159 budget approved for the Berks County CLA program for the entire 1981-1982 fiscal year." (Exhibit 7.)

(52) The executive committee of Shiloh, Inc. held a meeting on May 13, 1982. The minutes of that meeting were marked at trial as exhibit 8 and admitted into evidence.

(53) The following persons were in attendance at the executive committee meeting of May 13, 1982: Jack Kille, Art Grim, Judy Diffendal, Tom Siak, Nellie Conley, Marianna Wolfe, Jack Long (accountant), Michael Lydon, David Harris, and Miriam Sanchez. (Exhibit 8.)

(54) The following occurred at the May 13, 1982 meeting:

"(a) Defendant Lydon made a presentation concerning the financial situation of Shiloh, Inc.

"(b) Defendant Lydon informed the executive committee that at this time, it would be impossible for the agency to meet payroll, bills outstanding and regular cash flow needs.

"(c) Defendant Grim raised his concerns concerning liability and mentioned the possibility of cutting back on programs.

"(d) Defendant Siak suggested that maybe it would be a good idea to operate less programs.

"(e) Defendant Grim asked the board to give Michael Lydon a vote of confidence to approve his actions to date, which motion was made by Nellie Conley, seconded by defendants Siak and Wolfe and unanimously carried by a vote of the board of directors." (Exhibit 8.)

(55) Defendant Diffendal testified that in May of 1982 there was a discussion concerning the payroll

among the members of the board of directors. (N.T. 170-171.)

(56) Defendant Diffendal testified that the board of directors instructed Michael Lydon what to tell the employees regarding Shiloh's financial situation. To wit:

"...Michael Lydon would meet with the staff and indicate to them that we may have difficulty meeting the payroll, but that payments were guaranteed by the state and eventually would come." (N.T. 171.)

(57) A meeting of the executive committee of Shiloh, Inc. was held on May 27, 1982. A true and correct copy of the minutes of said meeting were marked at trial as exhibit 9 and admitted into evidence.

(58) The persons in attendance at this meeting of the executive committee of May 27, 1982 were Jack Kille, Art Grim, Karl Hilgendorf, Judy Diffendal, Nellie Conley, Tom Siak, Mike Lydon, David Harris, and Miriam Sanchez (secretary). (Exhibit 9.)

(59) The following events occurred at the May 27, 1982 meeting:

"(a) Defendant Kille gave an update of Shiloh, Inc.'s financial situation.

"(b) Defendant Grim discussed the possibility of Shiloh getting a loan from a Mr. Al Boscov for $40,000, which loan would be repayable in 60 days. In response, all board members agreed that any loan should be available for no less than 120 days.

"(c) Defendant Grim raised the possibility of asking for donations or engaging in some sort of fundraising.

"(d) Defendant Kille again asked the borad if they should accept the loan from Al Boscov to which the board agreed that repayment in 60 days was out of the question." (Exhibit 9.)

(60) The executive committee of Shiloh, Inc. held a meeting on June 10, 1982. The minutes of the meeting were marked at trial as exhibit 10 and admitted into evidence.

(61) The persons who were present at the meeting of the executive committee on June 10, 1982 were Judy Diffendal, Art Grim, Nellie Conley, Tom Siak, Mike Lydon and David Harris. (Exhibit 10.)

(62) The following events occurred at that meeting:

"(a) Defendant Diffendal made a motion to utilize separate banks for different accounts such as payroll, ICF/MR and CLA, which motion was unanimously carried by vote of the executive committee.

"(b) Defendant Siak made a motion that the executive committee be appointed as a fiscal monitoring committee, which motion was unanimously carried by vote of the executive committee.

"(c) Defendant Siak made a motion to implement a board policy to no longer issue payroll checks without a signed W-4 form, which motion was unanimously carried by vote of the executive committee.

"(d) The executive committee accepted its accountant's recommendation to prepare a cash flow projection for the next 12 months." (Exhibit 10.)

(63) The executive committee of Shiloh, Inc. held a meeting on June 15, 1982. The minutes of the meeting were marked at trial as exhibit 11 and were admitted into evidence.

(64) The persons in attendance at the executive committee meeting on June 15, 1982 were Jack Kille, Judy Diffendal, Tom Siak, Karl Hilgendorf, Nellie Conley, Art Grim, Mike Lydon and David Harris. (Exhibit 11.)

(65) The following events occurred at the June 15, 1982 meeting:

"(a) Defendant Grim made a presentation with respect to a meeting held at the Berks County MH/MR office on Tuesday, June 15, 1992 regarding Shiloh's contract for fiscal year 1982-1983.

"(b) The executive committee discussed the different types of bankruptcies which could be utilized by Shiloh, Inc.

"(c) Defendant Diffendal motioned to recommend to the full board of directors a Chapter 11 bankruptcy contingent on receipt of a line of credit sufficient to operate programs. This motion was seconded by defendant Siak and unanimously carried." (Exhibit 11.)

(66) The board of directors held a meeting on June 17, 1982. The minutes of said meeting were marked at trial as exhibit 12 and were admitted into evidence.

(67) Present at the meeting of the board of directors on June 17, 1982 were the following: Jack Kille, Art Grim, Judy Diffendal, Richard Keene, Mary Davis, Richard Searfoss, Julie Buckman, Tom Siak, Karl Hilgendorf, Mike Lydon, David Harris, and Jack Long, Jr. (accountant). (Exhibit 12.)

(68) At the June 17, 1982 meeting the following occurred:

"(a) Defendant Kille gave a presentation on the status of the organization with input by David Harris and Michael Lydon regarding the 'line of credit,' the delays in funding, delinquent taxes and bankruptcy.

"(b) For the benefit of new board members and as a review for all other board members, defendant Grim discussed board liability.

"(c) A motion was placed before the board of directors to allow the executive committee to act on behalf

of the full board in regards to whatever decision needed to be made regarding bankruptcy. This motion was carried unanimously by vote of the board of directors." (Exhibit 12.)

(69) A meeting of the executive committee of Shiloh, Inc. was held on July 8, 1982. (Exhibit 13.)

(70) Present at the July 8, 1982 meeting were the following: Art Grim, Michael Lydon, David Harris, Jack Kille, Judy Diffendal, Tom Siak, Nellie Conley, Marianna Wolfe, Mary Davis, and Julie Buckman. (Exhibit 13.)

(71) The following events occurred at the July 8, 1982 meeting:

"(a) The committee rejected a proposal from Integrated Industries by a vote of 5-3.

"(b) Defendant Grim made a motion to file Chapter 11 bankruptcy, which motion was seconded by defendant Diffendal and approved by the committee 7-1.

"(c) The committee discussed the development of a plan for the protection of their clients in case of a staff walk-off on July 9, 1982.

"(d) The committee discussed their potential liability for the safety and well-being of the residents in the CLA and ICF/MR programs.

"(e) The committee decided they could not develop a plan for evacation of clients within a 24 hour period to insure the clients' safety.

"(f) The committee then re-opened the Integrated Industries resolution and passed the resolution.

"(g) Defendant Grim motioned to rescind the motion to file Chapter 11 bankruptcy, and this motion was seconded by defendant Diffendal and carried unanimously.

"(h) The executive committee noted for the record it accepted the resolution from Integrated Industries to protect the clients in the programs and to limit board liability." (Exhibit 13.)

(72) The resolution approved by the executive committee authorized the following:

"(a) Acquisition of Shiloh, Inc. by Richard N. Ferraro or his designee.

"(b) Authorized the creation of a successor board of directors.

"(c) Authorized the installation of the following officers of the corporation: president—George Turner; secretary—Michael Lydon; treasurer—Janice Robinson.

"(d) Authorized the acceptance of $40,000 into the account of Shiloh, Inc. to be deposited therein on July 9, 1982.

"(e) Authorized the acceptance of a line of credit for Shiloh, Inc. in the amount of $150,000 for the purpose of meeting past and present obligations, including, but not limited to, unpaid employee withholding taxes, employer social security taxes, unemployment taxes, *payroll,* unpaid invoices, insurance, rents and any and all other obligations." (emphasis supplied)

(73) The resolution of July 8, 1982 was signed by defendant Judith A. Diffendal in her capacity as vice-chairman of Shiloh, Inc. (Exhibit 13.)

(74) On September 16, 1982, the board of directors of Shiloh of Berks County, Inc. held a meeting. (Exhibit 14.)

(75) The members of the board of directors who were present at the meeting of September 16, 1982 were: Jack Kille, Arthur E. Grim, Thomas Siak, and Richard Searfoss. (Exhibit 14.)

(76) The following individuals were also present at the meeting: George P. Turner, president; Michael J. Lydon, secretary; and Jack W. Long, accountant. (Exhibit 14.)

(77) The following events took place at the September 16, 1982 meeting:

"(a) Defendant Kille made a motion, seconded by defendant Searfoss, that the minutes of the previous meeting of the board of directors held July 8, 1982, together with the documented notes on subsequent informal meetings included in the minutes of this meeting, be approved and adopted. The motion was passed unanimously.

"(b) Defendant Grim made a motion, seconded by defendant Siak, that the actions of the directors and officers of the corporation during the period since the last annual meeting of the board of directors held on February 18, 1982, be *ratified, approved, and adopted.* This resolution also passed unanimously.

"(c) Defendant Kille made a motion, seconded by defendant Searfoss, that the certified audit statement as prepared by Jack W. Long & Company, for the fiscal year ending June 30, 1982 be approved and adopted. This, too, passed unanimously.

"(d) Defendant Grim made a motion, seconded by defendant Kille, that the report entitled, 'Status of Operations as of August 31, 1982' be approved and adopted. This resolution was unanimously approved.

"(e) Defendant Kille made a motion, seconded by defendant Siak, to accept the resignation of the eight members of the board of directors whose written resignations had been received. The resolution was approved unanimously.

"(f) Defendant Turner called attention to the fact that as a result of Shiloh, Inc. becoming a stock corporation, the office of the president became the office of the chief executive officer, with full authority to manage the activities of the corporation. Defendant Turner also requested that the clarification of his authority be made part of the record so there would be no confusion in the management authority of the CEO." (Exhibit 14.)

(78) At trial the plaintiffs introduced two pages from the Shiloh, Inc. policy manual entitled, "The Duties of a Board of Directors," which pages were marked as exhibit 1 and admitted into evidence.

(79) The duties of a board of directors as described in the Shiloh Policy Manual indicates:

"In most organizations, the board of directors find that the only practical way to meet its ultimate responsibility for effective management of the organization is to delegate that responsibility to a chief executive officer and his or her staff. In delegating this day-to-day responsibility, however, the board necessarily retains certain functions which every organization needs to have performed:

1. Reviewing program plans and budgets;

2. Evaluating organizational effectiveness;

3. Evaluating the top administrator and selecting a new person for this role when necessary;

4. Representiang the public need and interest to the organization;

5. Representing the organization to the public, especially to sources of financial support....

"To avoid confusion, a point is well worth emphasizing: to say that the board's primary duties are review, evaluation and representation is not to lessen the board's

responsibility for long range-planning, policymaking and even current programming and budgeting, whether or not any of these have been delegated to some degree. But it is necessary to distinguish between those responsibilities which a board can delegate and those which it cannot.... It would be irresponsible for a board to allow confidence in its staff to excuse it from thoroughly reviewing and evaluating what the staff does."

(80) The employees were reassured at meetings held on June 7, 1982, June 9, 1982, and June 18, 1982 that they would be receiving their back wages. (N.T. 67-70.)

(81) Defendant Turner sent a letter to every employee on the records of Shiloh, Inc. proposing a repayment program for back wages not yet paid by Shiloh, Inc. at the end of August 1982. (Exhibit 20.) (N.T. 208-210.)

(82) Defendant Turner testified he had limited discretion in the payment of bills for Shiloh, Inc. because of the requirement that checks be approved by Donald Bagenstose, County Commissioner of Berks County. (N.T. 222.)

(83) Defendant Turner also testified Commissioner Bagenstose did not have the authority to tell him how he could use all of the monies of Shiloh, Inc., in particular, monies received as a result of the Integrated Industries proposal of July 8, 1982. (N.T. 228.)

(84) Shiloh, Inc.'s personnel policy provided employees who terminated their employment with Shiloh would be paid accrued vacation pay at the time of termination. (N.T. 56.)

(85) Plaintiffs Allison G. Hawthorne, Lisa A. Koller-Sangiacomo, Lori A. Mentzer, Ray Rice, and Linda M. Simpkins terminated their employment with Shi-

loh, Inc. after defendants Turner and Robinson assumed their positions at Shiloh, Inc.

(86) Shiloh, Inc.'s operations in Berks County ceased on September 30, 1982 when Shiloh, Inc.'s operations were taken over by other agencies. (N.T. 231.)

## DISCUSSION

The key question to be decided is whether the individual defendants are employers pursuant to the provisions of the Wage Payment and Collection Law. Only if the defendants are employers as defined in the law, are they personally liable to the plaintiffs.

The Wage Payment and Collection Law, 43 P.S. §260.1 et seq. imposes liability upon "employers" for wages, fringe benefits and/or wage supplements. The term "employer" is defined in section 260.2a:

" 'Employer.' Includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."

When a corporate employer is involved, the term employer is not limited to the corporation. In *Ward v. Whalen,* 18 D.&C.3d 710 (1981), Judge Wettick of the Allegheny County Court of Common Pleas stated:

"The legislature had some purpose for including an agent or officer of a corporation employing persons in the Commonwealth within the definition of employer, and the only apparent purpose was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments....Decisions dealing with personnel matters and the expenditure of corporate funds are made by corporate officers and it is far more likely that the limited funds of an insolvent corporation will be used to pay wages and that a work force will be reduced

while the corporation is still capable of meeting its obligations to its employes if personal liability is imposed on the persons who make these decisions." *Id.* at 712.

However recent case law suggests that personal liability under the Wage Payment and Collection Law cannot be imposed merely because the defendants are corporate officers or agents. The defendants must also be decision-makers or policymakers. *Laborers Combined Funds of Western Pennsylvania v. Mattei,* 359 Pa. Super. 399, 518 A.2d 1296 (1986). Absent some indication that the defendant exercised a policy-making function in the company, he is not among the class of persons who may be liable under the Wage Payment and Collection Law. *Central Pennsylvania Teamsters Pension Fund v. Burton,* 634 F. Supp. 128 (E.D. Pa. 1986). Thus, the plaintiff-employees must present evidence of an active role in decision making to render the defendant-directors liable. *Bowers v. Neti Technologies, Inc.,* 690 F. Supp. 349 (E.D. Pa. 1988).

The plaintiffs' evidence consisted of the Shiloh Policy Manual and minutes of the executive committee and board of directors' meetings. The policy manual clearly states it is the function of the board of directors to review program plans and budgets, to evaluate organizational effectiveness, to evaluate the top administrator, to hire a new administrator when necessary, and to represent the organization to the public and to sources of financial support. The minutes of the board of directors and executive committee meetings indicate the defendant-directors each acted as decision-makers and policymakers at various times. (See Findings of Fact, 39-79.) It is an inescapable conclusion that the defendants are employers as defined by the Wage Payment and Collection Law. Accordingly, the defendant-directors and officers are liable to the plaintiffs for back wages and vacation pay.

Defendant J. Karl Hilgendorf attempts to escape liability by relying upon a recent Superior Court decision which

held that a non-functioning officer of the corporation is not liable for back wages. *Mohney v. McClure,* 390 Pa. Super. 338, 568 A.2d 682 (1990), *affirmed,* 529 Pa. 430, 604 A.2d 1021 (1992). In *Mohney,* a salesman for a bankrupt corporation filed an action for back wages. The trial court found the defendant corporate secretary and counsel an employer but held that since he was not a functioning officer, he was not liable. The Supreme Court affirmed the trial court after engaging in a very fact specific analysis of the defendant's role in the corporation. The court found the defendant accepted a small monthly retainer, owned stock, participated in the hospitalization plan, took minutes at the meetings and had authority to sign checks on the corporate account. The court determined the defendant merely carried out decisions made by others. There was no evidence of the defendant voting in board meetings, nominating officers or participating in board discussions.

In the instant case, defendant Hilgendorf attended seven of 12 meetings of the board, voted in all seven meetings, nominated defendant Siak for the position of secretary and was nominated for the position of treasurer. In all of the meetings which he attended and voted, defendant Hilgendorf voted on matters concerning personnel policy changes, adopted the annual report, accepted resignations, approved new site locations, approved of executive director Michael Lydon's management of Shiloh, Inc., and voted to file Chapter 11 bankruptcy. These actions indicate to this court that defendant Hilgendorf was a functioning member of the board of directors and not merely an errand-boy as he claims.

Defendants Turner and Robinson attempt to escape liability based upon two theories. First, they claim they should not be held liable because neither defendant Turner nor defendant Robinson had anything to do with Shiloh during the time the plaintiffs' salaries were not paid. Second, they claim they had no decision or policy-making

functions as president and treasurer of Shiloh. Both of these claims are specious for several reasons. First, on September 16, 1982, defendants Turner, Lydon, Kille, Grim, Siak and Searfoss passed a resolution whereby the actions of the directors and officers of the corporation during the period since the last annual meeting of the board held on February 18, 1982 were ratified, adopted and approved. Second, the report of the treasurer, prepared by Jack W. Long and Company, outlined the financial straits of Shiloh including the unpaid salaries. This report was also adopted and approved. Third, defendant Turner in his capacity as president, presented his report, "Status of Operations as of August 31, 1982" in which he described the activities of Shiloh, Inc. from July 8, 1982 to August 31, 1982. This report included four exhibits documenting back wages owed, terminated and current employees. Fourth, at the same board meeting, defendant Turner requested his authority as president and chief executive officer be made part of the record so that there would be no confusion in the management authority of the CEO. This request, like all other motions presented before the board, was unanimously adopted and approved by the board. Fifth, defendant Turner's report described defendant Robinson's role at Shiloh as the individual responsible for fiscal and accounting functions. Perhaps most telling of defendant Robinson and Turner's role in the decision-making process of Shiloh, Inc. is the letter dated August 10, 1982 signed by defendant Turner and sent to each employee of Shiloh, Inc. The letter represented that Shiloh, Inc. was aware of the wages due and owing and was attempting to secure funds to satisfy the debts. Further, the letter attempted to establish a payment schedule for the satisfaction of the debts. This letter and the previous described activities of the board demonstgrate that defendants Turner and Robinson did in fact have knowledge of the plaintiff's claims, that they adopted the actions of the prior board as their own, that they were more

than mere functionaries, and that they were policy-making and decision-making members of the board.

## CONCLUSIONS OF LAW

(1) Plaintiffs' complaint states a claim for unpaid wages and fringe benefits pursuant to the Wage Payment and Collection Law, 43 P.S. §260.1 et seq.

(2) Plaintiffs were employees of Shiloh, Inc. and, as such, have standing to bring an action pursuant to the Wage Payment and Collection Law.

(3) Section 260.2a defines the term "employer" as follows:

" 'Employer.' Includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."

(4) Shiloh, Inc. was an employer pursuant to the Wage Payment and Collection Law.

(5) Defendant directors and officers are employers pursuant to the Wage Payment and Collection Law.

(6) Defendant directors and officers are subject to personal liability under the Wage Payment and Collection Law as they were decision and policymakers for Shiloh, Inc.

(7) Defendant directors and officers are liable to the plaintiffs for back wages and fringe benefits owed.

## DECISION

(1) The plaintiffs are entitled to their claims for wages and fringe benefits in the amount of $12, 043.12 in accordance with the wage claim summary attached hereto, marked exhibit B.

(2) The plaintiffs are entitled to liquidated damages at $500 per person, pursuant to 43 P.S. §260.10.

(3)  The plaintiffs are entitled to attorney's fees and costs pursuant to 43 P.S. §260.9a(f).

(4)  The plaintiffs are entitled to interest at a rate of 6 percent per annum from July 8, 1981 until the judgment is satisfied.

(5)  Defendants are jointly and severally liable for the judgment.

The prothonotary is directed to notify the attorneys of record of the filing of this decision pursuant to Pa.R.C.P. 1038 and, if post-trial motions are not filed in accordance with Pa.R.C.P. 227.1, to enter judgment on praecipe in accord with Pa.R.C.P. 227.4.