GREENBERG, Circuit Judge,
concurring and dissenting.
I respectfully dissent in part in this case which is of enormous significance under bankruptcy law. As the majority points out, Shenango Corporation in December 1992 filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A group of Shenango’s former employees sought to recover specific sums of money for vacation and supplemental retirement benefits earned before the petition was filed but due in the post-petition period in an action under the Pennsylvania Wage Payment and Collection Law (“WPCL”), Pa.Stat.Ann. tit. 43, § 260.1, et seq. (West 1992). The employees brought the action against Mark and Andrew Aloe, officers of Shenango, in a Pennsylvania state court, but the Aloes removed the case to the district court which then referred it to the bankruptcy court. The Aloes then filed a third-party complaint against Shenango predicated on an indemnification agreement. The bankruptcy court granted the Aloes and Shenango summary judgment against the employees’ claims, and the district court affirmed. The employees then appealed to this court.
The majority makes a comprehensive analysis upholding the bankruptcy court’s exercise of subject matter jurisdiction, and I join this portion of its opinion. The majority then defines the “substantive issue” as “whether the employees can sue the Aloes, as officers of Shenango, under the WPCL for Shenango’s non-payment of certain pre-petition benefits that became due to the employees in the period after Shenango had filed for bankruptcy.” Maj. Op. at 638. The majority points out that employers must pay “fringe benefits and wage supplements,” “as required” by the WPCL, and that employees may institute actions to collect such items if they are “payable.” Id. at 639. The majority recognizes that the top management of a company can be liable under the WPCL but characterizes their liability as being “contingent on the corporation’s failure to pay debts that it owes.” Id. at 639. It then indicates that once the corporation files a petition under Chapter 11, “it is obligated to pay wages and benefits only to the extent required by the bankruptcy workout.” Id. The majority then concludes that the bankruptcy and district courts reached the correct result because “when a corporation under Chapter 11 fails to make payments that the Bankruptcy Code does not permit, the contingency needed to trigger the liability of corporate manag *642 ers under the Pennsylvania WPCL never occurs.” Id. at 639.
The majority contends that its result is consistent with the goals underlying the WPCL. It reasons that Pennsylvania law holds agents and officers liable “to give [them] an incentive to pay wages and benefits while the corporation still has the resources to do so,” Maj. Op. at 639, citing Mohney v. McClure, 390 Pa.Super. 338, 568 A.2d 682, 685 (1990), aff'd per curiam, 529 Pa. 430, 604 A.2d 1021 (1992). It then concludes that “[g]iven that the purpose of the WPCL is to deter managers from strategically diverting company resources away from the payment of wages and benefits, it makes sense for the WPCL to apply in only those contexts in which the managers have room to behave strategically.” Maj. Op. at 639-40. The majority supports this conclusion by citing Mohney v. McClure and Central Pa. Teamsters Pension Fund v. Burten, 634 F.Supp. 128, 131 (E.D.Pa.1986), for the proposition that only decision makers in the corporation can be hable under the WPCL.
According to the majority, the logic of Mohney applies here because “[o]nce Shenango filed for bankruptcy ... management no longer had the power to choose not to use [its] funds to pay wages [because] bankruptcy law compelled it to refrain from paying the employees’ claims.” Maj. Op. at 640. It thus concludes that “the WPCL did not come into play.” Id. at 640.
I reject the foregoing analysis. Under the WPCL, the definition of employer encompasses “every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth.” Pa.Stat.Ann. tit. 43, § 260.2a. For clarity, in applying this definition throughout this opinion I distinguish “statutory employer(s)” from “conventional employer(s).” Under the facts of this case, the corporation, Shenango, was the employer in the conventional sense; that is, the employer who actually paid wages and benefits to the employees (when such payments were made). Under the WPCL, however, both a corporation and its agents and officers are deemed “employers”; I call the agents and officers “statutory employers.”
For purposes of these proceedings, there is no doubt but that the Aloes are agents or officers of Shenango and are thus the employees’ statutory employers. In fact, the bankruptcy court said as. much for it indicated that “[a]bsent bankruptcy, the Aloes, in their positions as officers of Shenango, would have been liable for claimed amounts pursuant to” the WPCL. Indeed, the majority does not suggest otherwise. Thus, in analyzing this case we undoubtedly must start from the premise that had there been no bankruptcy and Shenango had not made the payments, the Aloes would be liable under state law; again the majority does not suggest otherwise.
The majority characterizes agents’ and officers’ liability as a “contingent” liability which comes into play when the corporation does not make the payments it owes. I do not believe that the majority uses the term “contingent” in a technical or legal sense for the WPCL requires that “[e]very employer ... must remit the deductions or pay or provide the fringe benefits or wage supplements” as required by the WPCL. Id § 260.3(b). Inasmuch as the Aloes are employers, their responsibility under the WPCL was as primary as that of Shenango. Yet, as a practical matter, I have no quarrel with the characterization of their liability as “contingent”; undoubtedly in the ordinary situation, the corporation, or conventional employer, pays the benefits; the liability of its agents or officers as statutory employers is significant only when the conventional employer does not make those payments.
But whether we characterize the Aloes’ liability as contingent or primary makes no difference. There cannot be the slightest doubt but that the legislature contemplated that if the corporate employer, i.e., the conventional employer, did not make the payments required under the WPCL, then the decisionmaking agents and officers as statutory employers would be liable for them. This liability cannot be avoided by the majority’s conclusion that the agents and officers should not be hable because the corporation lawfully could not make the payments. *643 Nothing in the WPCL even remotely can be read to excuse the agents and officers as statutory employers, in this ease the Aloes, from liability merely because the conventional employer, in this case, Shenango, cannot make the payments. Nor does the WPCL distinguish a corporation’s inability to make payments by reason of operation of law from its inability to make payments because it does not have the money to do so.
In fact, whether an agent’s or officer’s liability is viewed as primary or contingent, when the corporation as the conventional employer does not make the payments required by the WPCL, the parties confront the exact circumstance in which the legislature contemplated that the employees could hold the agents or officers as statutory employers liable. Nothing could be clearer for, as we explained in Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc., 727 F.2d 279, 282 (3d Cir.1983) (internal quotation marks omitted), “the [legislature’s] only apparent purpose [for defining an agent or officer as an employer] was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments.” I cannot join an opinion which excuses the agents and officers from liability at the exact time when it is important that they be liable because the legislature cannot possibly have intended such a result.
I also point out that a decision-making agent’s or officer’s liability for payments due under the WPCL is not dependent on a showing of his or her culpability or scienter. As the Pennsylvania Superior Court explained in Laborers Combined Funds v. Mattei, 359 Pa.Super. 399, 518 A.2d 1296, 1300-01 (1986) (emphasis in original), “[o]f those courts which have had occasion to rule on the personal liability of corporate officers in the face of a corporation’s failure to make its required contributions to various union funds, as provided for in their collective bargaining agreement, all have, without exception, held the officer(s) of the corporation personally liable, and they did so without reference to any proof of culpability or scienter as a sine qua non to establishing a contravention of the Act in a civil suit.” So there you have it. If, as seems to be the case, the Aloes were the decision makers, they are liable for the amounts due under the WPCL and the case should be remanded to the bankruptcy court for further proceedings.
I respectfully suggest that the majority’s contrary points are unavailing. It points out that the imposition of agent or officer liability seeks to deter the corporate agents and officers from diverting to .another purpose “funds that are meant to go towards paying wages and benefits.” Maj. Op. at 639. I certainly agree with that proposition, yet the fact that an agent or officer who diverts funds may be liable under the WPCL does not mean that an agent or officer cannot be hable without diverting funds. Laborers Combined Funds makes this point clear for in that case even though a bookkeeper embezzled the money that should have been used to satisfy the obligations under the WPCL, the officers were hable because their liability was not dependent on their “culpability or scienter.” We should consider, too, the case of a corporation which never generated income, ie., a new business, but which incurred obligations under the WPCL. In that case there would be no funds to divert, yet surely the decision-making agents or officers would be hable.
The bottom hne on the diversion theory is this: there is nothing in the WPCL itself or in the case law to support a conclusion that an agent or officer can be hable only if he or she diverts funds that should have been applied to obhgations due under the WPCL. The WPCL is not a trust fund statute imposing liability only when the agent or officer has misapplied the res, and thus it should not be treated as a trust fund statute. Yet by predicating liability on the diversion theory, the majority treats the WPCL as a trust fund statute. In fact, the WPCL establishes employers’ liability without regard for trust fund concepts and, as we must on this appeal treat the Aloes as employers, they are potentially hable and were not entitled to summary judgment.
The majority contends that inasmuch as the purpose of the WPCL is “to deter managers from strategically diverting company resources away from the payment of wages *644 and benefits, it makes sense for the WPCL to apply in only those contexts in which the managers have room to behave strategically.” Maj.. Op. at 639-40. Here Shenango’s bankruptcy deprived them of that room. Yet the cases the majority cites on the point do not support its conclusion in this case for they merely establish that corporate agents who are not corporate decision makers are not liable under the WPCL because they are not statutory employers. See Mohney, 568 A.2d 682, and Central Pa. Teamsters Pension Fund, 634 F.Supp. 128. The immunity of the officers in those cases stemmed from the circumstance that they were not decision makers in the corporation, not from their failure or inability to have exercised control over the “decision” not to make the required payments. These cases are not relevant to the issue at hand which is whether an agent or officer who is a statutory employer, and who by reason of a bankruptcy loses his or her freedom to apply the corporate assets strategically, nevertheless remains hable under the WPCL.
At the outset of this dissent, I said that this case is of enormous significance to bankruptcy law. I will now explain why. The principles involved in this case are applicable in any case in which a person has guaranteed a debt of a bankrupt corporation. (I use the term “guaranteed” broadly to include coobligors, endorsers, and guarantors in situations in which, as between the debtors, the obligation to pay is primarily on the bankrupt.) The majority seeks to distinguish this case “from an ordinary third-party guaranty of a debt,” Maj. Op. at 640 n. 7, and indicates that it intends to predicate its opinion solely on an interpretation of the Pennsylvania law as set forth in the WPCL. Thus, it believes that this case should not have implications in other contexts.
I believe, however, that this case is not distinguishable from a case involving an ordinary guaranty. The majority says that the liability of agents and officers under the WPCL “is not automatic,” but rather accrues only when the officers exercise decision-making authority with respect to the challenged nonpayment. Maj. Op. at 640 n. 7. However, for statutory employers the liability arises by operation of law, and thus to that extent it is indeed automatic. Liability under the WPCL is not dependent on the circumstances surrounding or the causes of the nonpayment, whether external to or intrinsic within the statutory employers. Thus, just like an ordinary guaranty, the liability of agents and officers under the WPCL is “automatic.” Furthermore, in the case of an ordinary guaranty, just as here, the creditors call on the guarantor to pay because the corporation cannot.
The majority’s attempt to limit this case to an application of the WPCL fails for the additional reason that there is not even a hint in that Act that the liability of a statutory employer is affected by the bankruptcy of the corporate or conventional employer. If a court can create a bankruptcy exception to the statutory employers’ liability here, persons who have made other types of guarantees will seek similar relief. Accordingly, this case opens a door which will be hard to close. But even if somehow the impact of this case could be limited to situations under the WPCL, I nevertheless think that the majority is reaching the wrong result in this case which in itself is of great importance.
I close with one final point. The majority apparently believes that practical considerations require it to reach its result. It points out that “[cjorporate bankruptcies are not unusual events” and that corporations in Chapter 11 proceedings are stayed from paying prepetition debts. It thus indicates that an application of the WPCL in a situation such as this may result in imposition of “staggering personal liability” on corporate officers, thereby creating an incentive for corporations to avoid locating in Pennsylvania. Maj. Op. at 640 n. 8. The problem with this point is that we are judges, not legislators, and it is beyond our power to rewrite the WPCL so as to create a bankruptcy exception in favor of statutory employers merely because we believe that it would be good for business to do so.
The majority does not point to a bankruptcy exception in the WPCL to support its conclusion that the “staggering personal liability” should not be imposed for the very good reason that the WPCL does not include *645 any such provision. Rather, the WPCL imposes liability on statutory employers without exception under the WPCL. Thus, even under the majority’s view that its result is consistent with the policy of the WPCL, which I reject, the majority should not read a bankruptcy exception into that act. Rather, it should heed the point we made so recently in In re Barshak, 106 F.3d 501, 506 (3d Cir.1997), that we “are not free to ignore the clear language of a Pennsylvania statute merely because by rewriting the statute we arguably would act consistently with a legislative policy.” In fact, the majority’s creation of a bankruptcy exception in the WPCL has frustrated the purpose of the Act because relegating the employees to a remedy against the corporate employer means that they can recover only as provided in a plan of reorganization or, as I explain below, not recover at all. This relegation almost surely will mean that the employees will not receive the payments due under the WPCL. Thus, I cannot understand why the majority suggests that this case merely involves a situation where the corporation is “temporarily stayed, by operation of the Bankruptcy Code,” Maj. Op. at 640 n. 8, from paying the employees’ claims. In fact, the employees’ claims against Shenango largely have been discharged. Shenango itself makes this point clear for it explains in its brief that “the Former Employees hold allowed unsecured claims against Shenango’s estate and pursuant to the Plan the claims were discharged except to the extent that they will receive pro rata payments under the confirmed Plan of reorganization in satisfaction of the Wage Claims.” Br. at 3.
I also point out that there is no principled way to distinguish between large corporations in which claims against the statutory employers could be “staggering” and small one-person corporations. Thus, according to the logic of the majority opinion, if a small corporation owned and operated by a single person receives a discharge under Chapter 7 of the Bankruptcy Code, even if, as is likely, the owner is a statutory employer under the WPCL and is not in bankruptcy personally, he or she will be discharged from liability under the WPCL. After all, the Bankruptcy Code restrains a corporation being liquidated under Chapter 7 from using its funds as it sees fit just as its restrains a corporation reorganizing under Chapter 11 in its use of its funds. In such a case under Chapter 7 the employees may receive nothing on their WPCL claims even though the statutory employer has substantial assets. I cannot conceive that the legislature intended such a result.
For the foregoing reasons, I respectfully concur in part and dissent in part.